Charles E. **KUNZLER**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

No. C 147–60.

United States District Court
D. Utah, N. D.

Dec. 11, 1961.

Milton A. Oman, Salt Lake City, Utah, for plaintiff.

William T. Thurman, U. S. Atty., Salt Lake City, Utah, for defendant.

CHRISTENSON, District Judge.

This case was tried to the Court on September 19 and 20, 1961 in the Northern District of the Division of Utah, and submitted on oral statements and briefs, and proposed findings of fact, conclusions of law and judgment suggested by the respective parties in view of an oral indication of the Court's tentative views at the close of the case.

This is an action for damages under the Federal Tort Claims Act, 28 United States Code § 1346(b). The plaintiff claims that during the summer season of 1960 an unauthorized grazing use of his lands was made by livestock belonging to Alvin James, Ferris James and Jess James and was resumed during the grazing season of 1961 up until the time of the trial; that this use of plaintiff's lands was unlawful and constituted a trespass; and that the agents of the United States wrongfully and overtly encouraged, directed, counseled and abetted in such unauthorized use and collected fees from the Jameses for the forage consumed from plaintiff's land.

The defendant United States claims that if any unlawful grazing use had been made of plaintiff's lands, it in no way committed the trespass, nor did it aid, encourage or abet the same. Defendant also asserts, as a matter of law, that any action taken by it was in the exercise or performance of a discretionary function or duty within the contemplation of Title 28 United States Code § 2680(a); that any acts were acts exercising due care in the execution of a statute or regulation, 43 United States Code § 315 et seq. and 43 Code of Federal Regulations 161, within the contemplation of 28 United States Code § 2680(a), or the acts were merely an interference with plaintiff's contractual rights as lessee or purchaser within the meaning of 28 United States Code § 2680(h), and thus involved no tort liability on the part of the government.

The vitals of this case are probed by one of several issues of fact reserved in the pre-trial order and by one of the several issues of law referred to therein. These are as follows: Whether the acts of the government complained of in connection with any alleged trespass were limited to the issuance of licenses or permits to Alvin James, Ferris James or Jess James to graze on federal range; and, if not so limited, of what did the alleged trespasses consist? And, if the acts or omissions of the government agents, with reference to the alleged trespass, were only in respect to the granting or refusal to grant grazing permits, was the alleged negligence complained of an inherent part of the exercise or performance of a discretionary function or duty on the part of such agents?

The importance of a sound resolution of these problems is manifest when it is considered that if, in connection with the granting or denial of grazing permits, agents of the government can cloak, and thus insulate from redress acts not involving a discretionary function but utilizing such function only as a staging area for tortious wrong, the beneficent purposes of the Federal Tort Claims Act would be unjustly circumvented; but, on the other hand, if, for the granting or denial of grazing permits under the Taylor Grazing Act or under any federal system involving similar discretion, agents of the government, exercising their legitimate discretion as contemplated by the act in question although with some unfavorable impact or effect upon the applicant or others, can be held liable for damages for the manner in which they exercise their discretion, the express exception to the application of the Tort Claims Act clearly expressed by Congress would be nullified. 28 United States Code § 2680(a). Moreover, in the latter event, the administration of the act would doubtlessly be made impossible as a practical matter.

These latter considerations are pointed up by the factual situation. In the grazing district in question control of the land is irregularly divided in a "checker-board" fashion among the plaintiff, the Jameses and the government, except for such exchange of use agreements or leases as may be voluntarily negotiated among them. If either the Jameses or the plaintiff refuse to so negotiate or participate for the joint use of the property, at least some trespass is rendered possible or likely by the granting of a Taylor Grazing Permit to the other. Does the government assume responsibility for trespass under such circumstances by issuing a permit, or do the circumstances require a denial of permits to all applicants? These are some of the problems here. The manner in which they confront the court and their solution best can be understood by a more extended finding of the surrounding facts.

During the period of time extending from May 1, 1960, to September 1, 1961, plaintiff was the owner of and entitled to the possession of lands located in Box Elder County, Utah, described as Section 1, and the Northeast quarter of Section 11, Township 11 North, Range 16 West, Salt Lake Meridian, and Sections 17, 21, 23, 25, 26, 27, 29 and 32, Township 12 North, Range 16 West, Salt Lake Meridian, and was the lessee entitled to the possession of Section 16 and the North Half of Section 34, Township 12 North, Range 16 West, Salt Lake Meridian, within said County, which lands, excepting Sections 16 and 17, are within the Bovine Summer Unit Grazing Area, which was established by the defendant through the Bureau of Land Management, a duly established agency of the federal government, in the administration of federal range under and in accordance with the provisions of the Taylor Grazing Act, 43 United States Code § 315 et seq., and the Federal Range Code for Grazing Districts, 43 Code Federal Regulations, § 161. Except for the plaintiff's lands, the lands within the Bovine Summer Unit belong to or are leased by the James brothers (Alvin James, Ferris James and Jess James) or were public range lands belonging to the United States.

During all times material to this case, the James brothers have been granted by the defendant, by regular permits, the privilege to graze federal range within the Bovine Summer Unit. By regular licenses and permits and by exchange of use licenses issued by the defendant under, and in accordance with, the provivions of the Taylor Grazing Act and the Federal Range Code for Grazing Districts the plaintiff has, each year since about 1946, and including the year 1961, excepting only the year 1960, been entitled to graze the federal range within the Bovine Summer Unit in common with the James brothers under exchange of use licenses duly applied for by the plaintiff and issued by the defendant in accordance with the act and the code mentioned. Except for the year 1960, plaintiff had relinquished the control of his private lands in this unit in favor of common grazing within said unit by him and the James brothers.

The difficulty in this case apparently arose by reason of the inability of the federal officials and the plaintiff to reach an exchange of use agreement for the year 1960. Plaintiff made application to the defendant for an exchange of use license to graze two hundred ten head of cattle on the federal range within the unit instead of one hundred forty five head theretofore regularly permitted to plaintiff by the defendant under previously issued exchange of use licenses. The defendant denied the plaintiff the exchange of use licenses upon the enlarged basis; and, by reason of such denial, the plaintiff withdrew his application with the effect that no license was granted to plaintiff for that year.

The lands of the Jameses, those of the plaintiff, and the public range within the Bovine Summer Unit are so adjacent and intermingled, as a practical matter, that it is difficult, if not impossible, for the land under one control to be utilized for the grazing of cattle without involving

the possibility or likelihood of the grazing of the land which is under another control. Particularly the public domain, as a practical matter, cannot be grazed by cattle without the likelihood of involving the intermingled land of the plaintiff. The reverse is also true. No practical use of his land can be made by plaintiff without involving the likelihood of grazing the public domain. These are circumstances which were known to all of the parties concerned in this case. An effort had been made by the agents of the government, in order to cope with this situation when it appeared that an agreement could not be reached with the plaintiff for an exchange of use, to devise a fenceline which would permit a practical division of the use of the land on some basis acceptable to the plaintiff; but the plaintiff for reasons of his own declined to concur in the defendant's suggestions. By reason of the inability of the parties to agree upon an exchange of use covering the plaintiff's land within the unit or a fence to better control the unit, a continuation of the usual permits of the James brothers on the unit involved the likelihood of their trespassing upon plaintiff's land. When the permits for the year 1960 were granted to the James brothers, on the usual basis, it appears likely that it was not finally known that no agreement could be worked out with plaintiff; but, nonetheless, the permits were granted. And, after it appeared that no agreement could be worked out with the plaintiff, they were continued in effect. No extra fee was charged the Jameses by the government by reason of the absence of the plaintiff's cattle from the unit nor was the point ever considered or discussed as far as the record discloses.

The permits granted to the James brothers did not purport to permit grazing on anything but the public range. The grazing manager of the defendant did not expressly notify the Jameses for the year 1960 that an exchange of use agreement had not been effectuated with the plaintiff for the use of plaintiff's land within the unit. The government's agents could have been more circumspect in this regard, but upon reflection I cannot attach great importance to this circumstance. It is not possible for me to conceive that the James brothers did not know about the fact that no agreement had been worked out with the plaintiff. One of them was a member of the advisory committee which acted upon plaintiff's application and recommended to the grazing manager that plaintiff's enlarged application be refused. The action of the government involved official action and there is nothing to indicate that the ruling upon plaintiff's application was kept secret in any way or that the Jameses did not actually know about the denial of plaintiff's application. The absence of plaintiff's cattle upon the unit during the grazing season of 1960 would have been an indication to the same effect. So, it appears that any substantial wrong or injury occasioned by any trespasses upon plaintiff's lands was the result of the action of the Jameses, involving no agency or similar relationship with the government but made possible by the granting or continuation in force of the permits issued by the government to the Jameses. There is no evidence, but the Court must find to the contrary, that government agents aided, encouraged, abetted, directed or counseled the trespasses upon plaintiff's land, except as this might be thought to have resulted from the mere granting to the Jameses of permits to graze the public land within the unit.

There was trespassing by the cattle of the Jameses upon the plaintiff's land during the summer of 1960. In fact, the grazing potential of plaintiff's land within the unit during the period between May 1, 1960, and October 15, 1960, was utilized substantially in full by the James cattle except for some undisclosed minor utilization by game. The exact proportion of use as between cattle belonging to Alvin James, Ferris James and Jess James is not shown by the evidence. For the year 1961 the James cattle also utilized the plaintiff's land along

with the James land and public land within the unit down to the date of trial, September 19, 1961, but plaintiff's cattle also utilized the same lands to the extent of one hundred forty five head of cattle; and, by reason of plaintiff's exchange of use agreement for the season of 1961, there could be no liability arise in that year in any event.

There was a local fence law duly adopted in the county in which the lands in question are located pursuant to Section 4–12–7 Utah Code Annotated, 1953. Section 4–12–9 of the Utah Code Annotated, 1953, provides that if any cattle (or certain other animals) shall trespass or do damage upon the premises of any person, "except in cases where such premises are not enclosed by a lawful fence in counties where a fence is required by law," the party aggrieved may recover damages by a civil action against the owner of the trespassing animals. While there was fencing in and about parts of the Bovine Summer Unit, the plaintiff's property was not lawfully fenced as contemplated by the fence law, nor was the entire unit as a whole lawfully fenced.

Thus is raised the critical question here of whether the refusal of government agents to grant to the plaintiff a permit to graze his cattle upon the unit on the terms demanded by the plaintiff or the granting of the permit to the James brothers to use the public range within the unit, under the circumstances disclosed by the evidence and found hereinabove, gives rise to liability under the Federal Tort Claims Act.

In his argument and in his proposed findings the plaintiff at considerable length discusses the relationship between him and the agents of the government, particularly with respect to the refusal of the latter to grant permits requested by the plaintiff and their allegedly arbitrary and capricious action in passing upon various applications filed by the plaintiff. It is pointed out that on more than one occasion the action of the local agents had been reversed by administrative appeals; and, as a matter of fact, at the trial it was shown that further review was pending before the administrative agency. Certainly any administrative action thus subject to administrative review could not be the basis of a claim under the Federal Tort Claims Act; and when all is said about the difficulties between the range manager and the plaintiff involving action upon applications for permits or related matters, we must return to the issue in this particular case which is whether by granting or refusing to grant permits, under the circumstances shown by the evidence, the agent of the government was discharging a discretionary function within the exemption to the application of the Tort Claims Act or whether he acted negligently beyond, outside, or without the protection of, his discretionary power.

Plaintiff's theory is that the agents of the government were upon notice that if permits were granted to the James brothers without the consummation of an exchange of use agreement with the plaintiff they would be inviting and permitting the James brothers to utilize the plaintiff's land for the grazing of their cattle and hence would be aiding and abetting in such utilization. The plaintiff says that most of the James cattle when turned into the Bovine summer range unit are, on or about May 1, turned through a gate out of the James' field at the North line of Section 12 directly upon the Kunzler lands in Section 11, Township 11 North, Range 16 West, and other cattle are turned into the unit at other points. All such points of entry are at lower elevations. It is argued that by natural instinct and habit the cattle then graze toward the higher elevation ranges in this area in the mouth of Muddy Creek Canyon and up that Canyon to its highest elevation as the summer season advances. Thus it was foreseeable, plaintiff points out, that these cattle would graze the Kunzler lands if a permit were granted for them to graze the public land within the unit.

Upon the foregoing basis plaintiff argues that, as to the Jameses, the trespass was not inadvertent but in the na-

ture of a wilful act unavoidably resulting from turning the cattle into the unit and that thus the Utah fence law would not preclude liability. It is further argued that since the agents for the government must have known that if the unit range were used by the James brothers trespass by them upon plaintiff's lands would inevitably result, and the act of the agents in granting the permits and thus permitting the James brothers to use the public lands under the circumstances also amounted to a wilful act upon the part of the agents of the government for which liability should be held to exist despite the Utah fence law.

Interpretative cases concerning the state law are numerous and reach varied results upon different states of fact. It is unnecessary to analyze and to apply these cases to the circumstances here, particularly with reference to the liability of the Jameses since they have not been sued for trespass in this case. Furthermore, we are convinced that the acts of the agents of the government in making a determination with regard to building fences or granting permits, however their discretion may have been abused, did involve solely a discretionary function within the contemplation of the Tort Claims Act.

We do not perceive that the case of Oman v. United States, 179 F.2d 738, (10 Cir. 1949), aff'd after trial 195 F.2d 710 (10 Cir. 1952), is apposite, despite the reliance placed upon it by the plaintiff. In that case there was no attempt to revoke the permit in question, nor was there involved any discretionary function of granting or withholding it. Instead there was claimed to be, according to the allegations of the complaint, an outright interference with the plaintiff's grazing rights while their permit remained valid, outstanding and unrevoked. The Court of Appeals adopted this view. It seems that the doctrine and the limitations of that case not only fail to support but throw into question, the position of the plaintiff here.

Nonetheless, this is one of those difficult cases where there are some substantial equities in favor of the claimant and where by reason of the failure or inability of the government to work out an agreement with him permitting the use of the public range in the unit or to establish a system of fences or a division of the unit so as to permit a practical use by him on a basis agreeable to him, he no doubt has been deprived of, or handicapped in, the use of his land. However, it was the Jameses and not the government that trespassed upon plaintiff's land. His deprivation or difficulty relates to the government only through the refusal of its agents to grant him a permit on terms acceptable to him and in permitting the James' permits to stand.

As difficult as it may seem to sustain such a situation as is found here the difficulties would be multiplied imponderably were we to say that recovery could be had. This not only would be flying directly in the face of the provision which precludes recovery under the Federal Tort Claims Act for acts or omissions based upon the exercise or performance of a discretionary function; but if that rather considerable obstacle could be surmounted, we would still be faced with a Pandora's box full of other difficulties. Can a landowner in a unit by refusing to negotiate or inability to successfully negotiate an exchange of use agreement for his lands within a unit always recover from the government when he cannot practicably use his own land without the public range? Can he tie up the public range and prevent its use by others not merely by holding the others to accountability for trespassing but by saddling such trespasses upon the government? If, in fear that Kunzler would seek damages against the government for granting the James brothers a permit, a permit had been withheld from the James brothers when they would otherwise be entitled to the use of the public land, could the James brothers recover under the Tort Claims Act on the theory that

by withholding a permit from them they were wrongfully deprived of the opportunity to use their own land within the unit, which as a practical matter could not be used without trespassing upon the public land?

All in all, the only practical approach in this case seems to be to give force to the congressional provision that recovery cannot be had even for abuse in the exercise of a discretionary function. The landowner is not without some remedy either as against the individuals who trespass upon his land or administratively to get such a situation corrected if it involves an abuse of discretion. And the record suggests that in the past the plaintiff has not been wholly unsuccessful in this. But whether my resolution of the issues here is the most practical approach or not, it is the only lawful conclusion that I have been able to find.

I see no point in analyzing here the numerous authorities submitted by counsel for the respective parties. I have considered them and do not believe that they would preclude the result reached or would justify a different result.

Accordingly, it is concluded that the agents of the government were guilty of no acts or omissions which could be considered to have negligently or intentionally caused damage to the plaintiff as asserted herein by him, except that they granted grazing permits to the James brothers and denied grazing permits to the plaintiff with reference to the Bovine Summer Unit for the season of 1960. I further conclude that such acts and decisions were based upon and performed within the powers and discretion imposed upon such agents by the laws of the United States and regulations duly adopted pursuant thereto, and that they constituted discretionary acts within the contemplation of 28 United States Code § 2680(a), irrespective of whether such discretion was abused.

The foregoing is deemed sufficient as findings of fact and conclusions of law upon the determinative issues of this case and, in accordance therewith, the clerk is hereby directed to make and enter judgment against the plaintiff and in favor of the defendant on the issues raised by the plaintiff's complaint and the defendant's answer thereto of "no cause of action." Costs in this case will be denied without any feeling that the primary result reached in favor of the government is not fully warranted but in view of a degree of pettiness which it seems to me the agents of the government demonstrated in the manner of exercising their discretion, which may have been an irritating factor in the promotion of this litigation.