## CHOURNOS v. UNITED STATES.
### No. 4306.

United States Court of Appeals
Tenth Circuit.
Dec. 20, 1951.

Rehearing Denied Feb. 1, 1952.

Milton A. Oman, Salt Lake City, Utah (Milton V. Backman, Salt Lake City, Utah, on the brief), for appellant.

John C. Harrington, Washington, D. C. (Wm. Amory Underhill, Asst. Atty. Gen., Scott M. Matheson, U. S. Atty., Salt Lake City, Utah, and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff, as owner of a large tract of unfenced grazing land in Utah, brought this action under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), to recover damages resulting from the alleged improper administration of the Taylor Grazing Act, 43 U.S.C.A. § 315 et seq., on public lands contiguous to lands owned and controlled by plaintiff and within the limits of Utah Grazing District No. 1, otherwise known as Promontory Grazing District. This appeal is from a judgment in favor of the defendant.

The district, located in northwestern Utah, was created in April of 1935, and was divided into units for summer and winter grazing. Soon after its establishment in accordance with the Taylor Grazing Act and the Range Code, 43 C.F.R. 161, regular grazing permits to the full carrying capacity of the public lands were issued to the owners of base lands classified as dependent by use on such public lands. There were no public lands available for applicants in lower classifications. Within this district were lands owned by the Southern Pacific Land Company and referred to herein as railroad lands. The district and the company entered into a cooperative agreement whereby the unleased railroad lands would be administered by the district for grazing purposes as though they were public lands, with specified rentals or fees being paid to the company. The lessees of railroad lands were to retain the rights provided for in the Act and the Code to the same extent as any other owner or lessee.

The plaintiff had been engaged in the business of raising sheep for many years. His operations had been carried on 150 to 250 miles from the lands over which this dispute arose. He was a landowner and held regular grazing and exchange of use permits issued by the district within the area where his base lands were located. In 1947, plaintiff acquired by purchase the railroad lands in question, and obtained control of other lands in the same area by lease from the State of Utah. The total amount of the purchased and leased lands was in excess of 85,000 acres most of which was within the winter grazing area of the district. The railroad lands acquired by the plaintiff were the odd numbered sections while the public lands in the same vicinity were the even numbered sections, and this created a checkerboard pattern over the entire tract. This pattern was partially destroyed by lands granted to the State of Utah within each township which in this instance were leased by the plaintiff. There were approximately 230 sections within the exterior boundaries of the plaintiff's lands of which he owned or controlled approximately 62%.

Shortly after acquiring these lands, the plaintiff met with the Range Manager and most of the stockmen who owned or controlled lands within the area and who had theretofore through permits continuously used the railroad lands as well as the public lands. The plaintiff was advised that the problem created by his purchase could be solved only by entering into an exchange of use arrangement, or, if he did not care to use his land, by leasing it to the district under the Pierce Act, 43 U.S.C.A. § 315 m–1. The exchange of use arrangement was agreed upon. Thereafter, the plaintiff applied for exchange of use and crossing permits which were issued in the usual manner. These permits gave to the plaintiff the right to trail his sheep across public lands into the area and to graze them upon his own lands and the adjacent public lands to the extent of the forage produced upon his lands. In other words, his grazing privileges were limited to the feed equal to that which he produced upon his lands.

In September of 1948, the plaintiff again made application for crossing permits to trail his sheep from the summer range back into the area. He was advised by the

Range Manager that he had not renewed his exchange of use permits and consequently was not entitled to trailing privileges. Plaintiff then filed an application for an exclusive grazing permit on the public lands within the boundaries of his own lands. He advised the Range Manager that he did not desire to surrender control of his lands and felt that such a requirement before granting a crossing permit was a violation of the law. He took the position that, under the Taylor Grazing Act and the Range Code, crossing and grazing permits should be promptly granted to him. He was later advised that upon recommendation of the Advisory Board the permits would not be issued. As provided for in the Range Code, an appeal was taken from this decision. Unsuccessful attempts were made to reach some sort of an agreement whereby the plaintiff could obtain benefit of the grazing produced upon his own lands. Plaintiff stated that he intended to use his own lands as he saw fit. He was then advised by the Range Manager that, without an exchange of use or crossing permit, it was not possible for him to trail his sheep into the area without being a trespasser. The plaintiff then brought his sheep into the area with the result that they grazed upon public lands. The Range Manager then instituted trespass proceedings against him. Numerous conferences followed and finally plaintiff stated that he desired to enter into an exchange of use agreement to avoid further trespass actions. The trespass cases were settled and the permits were issued. Shortly thereafter the plaintiff filed this action.

The essence of plaintiff's claim is that under the provisions of the Taylor Grazing Act he is, as a matter of law, entitled to grazing permits upon adjacent and contiguous lands and to crossing permits to move his sheep from one range to another; that the representative of the United States for the purpose of coercing plaintiff into surrendering control of his lands to the district refused to issue such permits; and that such refusal and coercion were unlawful and together constituted a tort within the meaning of the Federal Tort Claims Act.

█ Generally, the Federal Tort Claims Act permits recovery against the United States in the District Courts for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment to the same extent that recovery could be had against a private person, 28 U.S.C.A. § 1346(b). There are, however, certain exceptions to this section. Title 28 U.S.C.A. § 2680(a) provides that the provisions of Sec. 1346(b) shall not apply to "Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Under the provisions of the Taylor Grazing Act and the Range Code, it was the function of the Range Manager acting upon advice of the Advisory Council to allow or reject the applications for Grazing or Crossing Permits.

██ The purpose of the Taylor Grazing Act is to stabilize the livestock industry and to permit the use of the public range according to the needs and the qualifications of the livestock operators with base holdings. To carry out this purpose, the Act and the Range Code authorized by the Act contemplate that the officials, with the advice of an advisory board composed of permit holders within the district, shall exercise their judgment and discretion in granting permits, and in determining the extent to which lands within the district shall be grazed. A livestock owner does not have the right to take matters into his own hands and graze public lands without a permit. If there is dissatisfaction with the action of the officials in the granting of permits, or as to other decisions, the livestock owner's remedy is by appeal as provided for in the Act and the Code (43 C.F.R. 161.9). Oman v. United States, 10 Cir., 179 F.2d 738. It seems clear to us that the grant-

ing or rejection of the applications here was within the discretionary function of the range officials as contemplated by Sec. 2680 (a) of the Federal Tort Claims Act. Sickman v. United States, 7 Cir., 184 F.2d 616, certiorari denied 341 U.S. 939, 71 S.Ct. 999, 95 L.Ed. 1366; Coates v. United States, 8 Cir., 181 F.2d 816, 199 A.L.R.2d 840; Cromelin v. United States, 5 Cir., 177 F.2d 275, certiorari denied 339 U.S. 944, 70 S.Ct. 790, 94 L.Ed. 1359; Kendrick v. United States, D.C.N.D.Ala., 82 F.Supp. 430.

We do not agree that the refusal to grant the permits amounted to an unlawful coercion of the plaintiff which required him to execute an exchange of use agreement sufficient to sustain this action, but even if it did the case should not be reversed. On conflicting testimony, the trial court held that there was no such coercion and that the exchange use agreement was entered into voluntarily by the plaintiff. The same is true as to the claim that the Range Manager permitted the lands of the plaintiff to be overgrazed.

The plaintiff complains of the prejudicial conduct by the court during the trial of the case and at the pretrial conference, and also alleged error in receiving and excluding evidence. In view of our decision these alleged errors could not have changed the result.

Judgment is affirmed.