**Val B. RICHMAN and J. Kent Giles, Appellants,**

v.

**Kenneth J. BECK, Appellee.**

**No. 5810.**

United States Court of Appeals Tenth Circuit.

June 18, 1958.

576

Harold S. Harrison, Atty., Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., A. Pratt Kesler, U. S. Atty., Llewellyn O. Thomas, Asst. U. S. Atty., Salt Lake City, Utah, and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellants.

Milton A. Oman, Salt Lake City, Utah (Oman & Saperstein, Salt Lake City, Utah, were with him on the brief), for appellees.

Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

PHILLIPS, Circuit Judge.

Beck brought this action against Richman, State Supervisor for Utah of the Bureau of Land Management, and Giles, Range Manager of Utah Grazing District No. 2,[1] seeking a declarative adjudication that Beck had the right to trail sheep across public lands in District No. 2, a mandatory injunction commanding the issuance by Richman and Giles and by their successors in office to Beck of permits or licenses "for the grazing or crossing of said public lands" and a mandatory injunction commanding Richman and Giles and their successors in office thereafter to continue to extend and issue such permits or licenses to Beck, upon proper application therefor.

Beck is engaged in the sheep raising business. In the course of his year-long operation he lambs his sheep on his range in the foothills of the Wasatch Mountains in Central Utah. He then moves his sheep to his summer range, lying to the east, for grazing purposes during the summer months. At the end of the summer season, he returns his sheep to his lambing range and then drives, or trails, his sheep from such range through District No. 2 to his winter range within Nevada Grazing District No. 4,[2] in the State of Nevada, adjacent to the Utah-Nevada state line. At the conclusion of the winter grazing on the Nevada range, Beck drives, or trails, his sheep through District No. 2 to his lambing range along the same route he uses in the fall to trail his sheep to the Nevada range. He thus concludes his year-long operation.

For the years since 1935, Beck has qualified for winter grazing under the provisions of the Taylor Grazing Act[3] and has been issued permits annually by the Bureau of Land Management authorizing such winter grazing in District No. 4, during the period from November 1 to April 30.

The trail used by Beck is 1 to 2 miles wide and 180 miles in length. It takes him approximately 30 days to trail his sheep across District No. 2. Unless Beck is accorded the right to trail his sheep across District No. 2 before November 1 and after April 30, respectively, he will be deprived of approximately 60 days' use of his Nevada range, that being the time required for the two trailing operations. However, sheep being trailed also graze along the trail and, should Beck be permitted to trail his sheep, before the opening date and after the closing date for grazing, through District No. 2 detriment would result to grazing permittees in such District whose right to graze is limited to November 1 to May 1.

1. Hereinafter referred to as District No. 2.

2. Hereinafter referred to as District No. 4.

3. 48 Stat. 1269, 43 U.S.C.A. § 315 et seq.

Authority to issue and renew permits and licenses, including crossing and trailing permits or licenses in District No. 2, has been delegated by the Secretary of the Interior to Richman and Giles, as State Supervisor and Range Manager, respectively, and they had such authority at all times here material.

Section 18 of the Taylor Grazing Act [4] provides in part:

"In order that the Secretary of the Interior may have the benefit of the fullest information and advice concerning physical, economic, and other local conditions in the several grazing districts, there shall be an advisory board of local stockmen in each such district, the members of which shall be known as grazing district advisers. * * *

"(b) Each district advisory board shall meet at least once annually at a time to be fixed by the Secretary of the Interior, or by such other officer to whom the Secretary may delegate the function of issuing grazing permits, and at such other times as its members may be called by such officer. Each board shall offer advice and make a recommendation on each application for such a grazing permit within its district: * * * Each board shall further offer advice or make recommendations concerning rules and regulations for the administration of this chapter, the establishment of grazing districts and the modification of the boundaries thereof, the seasons of use and carrying capacity of the range, and any other matters affecting the administration of this chapter within the district. * * *"

In 1939 the Advisory Board for District No. 2, established pursuant to § 18, supra, recommended that November 1 be fixed as the opening date and that May 1 be fixed as the closing date for grazing in District No. 2. In 1942 such Advisory Board recommended that the opening date be fixed as November 1 and that it should apply to trail herds, as well as grazing herds. Such recommendations were approved by R. D. Nielson, the District Grazier. At that time the Range Manager was designated as District Grazier.

Prior to 1956, a trail had been established in District No. 2 for use by raisers of livestock to trail their herds from Nevada to summer ranges in the Wasatch Mountains of Utah and back to Nevada.

Prior to 1956, Beck had apparently used the established trail and trailed his herds between the opening and closing dates fixed for District No. 2.

On September 24, 1956, Beck made an application for a license, or trailing permit, to cross District No. 2 with 2,725 sheep, between October 10 and October 31, 1956. On September 28, 1956, the Advisory Board recommended that such application for the dates requested be denied, but that if it should be amended "to conform with the dates and usual rules of trailing" it should be "approved for trailing not sooner than November 1st." On October 5, 1956, Giles denied such application.

Beck filed his appeal from such denial in accordance with the provisions of § 161.10, Title 43, C.F.R., in effect in the year 1956. Such appeal had not been disposed of on March 8, 1957.

In October, 1956, agents of the Bureau of Land Management intercepted Beck's sheep while they were being trailed across District No. 2, en route to Beck's Nevada range. On October 6, 1956, while the sheep were on the trail, Beck was served with a notice of trespass for having commenced trailing in District No. 2 prior to November 1 and was requested to pay a fine for such trespass. Beck denied that his sheep were trespassing, refused to pay the fine, and on December 18, 1956, commenced the instant action.

Counsel for Richman and Giles challenged the jurisdiction of the trial court

---

**4.** 60 Stat. 1100, 43 U.S.C.A. § 315o–1.

on the ground that the action was a suit against the United States, which had not consented to be sued, and that the Secretary of the Interior was an indispensable party defendant.

The trial court entered a judgment adjudging that Beck was entitled as a matter of right "to trail his livestock across the public lands involved herein between his privately owned or controlled ranges and the public ranges upon which he holds grazing permits or licenses at any and all times in connection with the conduct of his livestock business to improve or protect the condition of his livestock, or to otherwise efficiently manage them; * * *" and enjoining Richman and Giles from further withholding from Beck "any grazing license or permit for the crossing by plaintiff [Beck] with his livestock of the public lands within Utah Grazing District No. 2 for the purpose of arriving upon plaintiff's [Beck's] grazing area in Nevada Grazing District No. 4 on or after November 1 of each year, or for the purpose of returning to plaintiff's [Beck's] owned ranges in Utah either before or after April 30 each spring."

Section 1 of the Taylor Grazing Act, 43 U.S.C.A. § 315 in part provides:

"In order to promote the highest use of the public lands pending its final disposal, the Secretary of the Interior is authorized, in his discretion, by order to establish grazing districts or additions thereto and/or to modify the boundaries thereof, of vacant, unappropriated, and unreserved lands from any part of the public domain of the United States * * *. Whenever any grazing district is established pursuant to this chapter the Secretary shall grant to owners of land adjacent to such district, upon application of any such owner, such rights-of-way over the lands included in such district for stock-driving purposes as may be necessary for the convenient access by any such owner to marketing facilities or to lands not within such district owned by such person or upon which such person has stock-grazing rights. * * *"

Section 2 of the Taylor Grazing Act, 43 U.S.C.A. § 315a in part provides:

"The Secretary of the Interior shall make provision for the protection, administration, regulation, and improvement of such grazing districts as may be created under the authority of section 315 of this title, and he shall make such rules and regulations and establish such service, enter into such cooperative agreements, and do any and all things necessary to accomplish the purposes of this chapter and to insure the objects of such grazing districts, namely, to regulate their occupancy and use, to preserve the land and its resources from destruction or unnecessary injury, to provide for the orderly use, improvement, and development of the range; * * *"

Section 3 of the Taylor Grazing Act, 43 U.S.C.A. § 315b in part provides:

"The Secretary of the Interior is authorized to issue or cause to be issued permits to graze livestock on such grazing districts to such bona fide settlers, residents, and other stock owners as under his rules and regulations are entitled to participate in the use of the range, upon the payment annually of reasonable fees in each case to be fixed or determined from time to time, * * *"

On December 23, 1955, the Secretary of the Interior promulgated revised regulations, known as the Federal Range Code for Grazing Districts, Cumulative Pocket Supplement to the Code of Federal Regulations, Title 43, § 161.1 to § 161.19, inclusive.

Section 161.5 of such Code in part reads:

"*Rating and classification of Federal range—(a) Grazing capacity; seasons and maximum annual period*

*of use.* The range manager, after recommendation by the advisory board, will rate the grazing capacity of each unit or area in a grazing district and will classify each for the proper seasons of use and for the maximum period of time for which any licensee or permittee will be allowed to use the Federal range therein during any one year."

Section 161.6(b) (2) in part reads:

"Any licensee or permittee who desires to use the Federal range for a period or periods other than as authorized by his license or permit may, upon written approval of the range manager, be allowed to use the amount of his authorized grazing privileges during any period of time for which the Federal range is classified as proper for use, * * *"

Section 161.6(e) (2) of such Code reads:

"No license or permit will provide for the grazing livestock on the Federal range during that part or parts of the year for which the Federal range has not been classified as proper for use."

Section 161.11(a) of such Code in part reads:

"* * * The following acts are prohibited on the Federal range:

"(1) Grazing livestock upon, allowing livestock to drift and graze on, or driving livestock across the Federal range, including stock driveways, without an appropriate license or permit, regular or free-use, or a crossing permit.

"(2) Grazing livestock upon or driving livestock across the Federal range, including stock driveway, in violation of the terms of a license or a permit, either by exceeding the number of livestock permitted, or by allowing livestock to be on the Federal range in an area or at a time different from that designated, or in any other manner."

Under § 315, supra, the power to grant to owners of land adjacent to a grazing district, upon application of such owner, rights of way over lands included in the district for stock driving purposes is vested in the Secretary of the Interior. Likewise, the power to issue or cause to be issued permits to graze livestock in grazing districts by § 315b, supra, is vested in the Secretary of the Interior.

The relief sought and the decree entered below, in effect, required the Secretary of the Interior to exercise, through a subordinate, a power vested in the Secretary and so to require would interfere with the public administration of public lands in Grazing District No. 2 by the Secretary of the Interior.

In Williams v. Fanning, 332 U.S. 490, 493, 68 S.Ct. 188, 189, 92 L.Ed. 95,[5] the court said:

"* * * the superior officer is an indispensable party if the decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him."

Counsel for Beck argue that while his prayer for relief sought a mandatory injunction, requiring the issuance of a trailing license or permit, the primary relief sought was a judgment restraining Richman and Giles from interfering with the trailing and grazing rights which he had previously enjoyed. But Beck has no right to trail his sheep in District No. 2, without a permit so to do from the Secretary of the Interior or his subordinates acting for him, nor to graze his sheep in District No. 2 without a permit so to do, issued or caused to be issued by the Secretary of the Interior.[6]

5. See also: Sellas v. Kirk, 9 Cir., 200 F. 2d 217, 220; Webster v. Fall, 266 U.S. 507, 510, 45 S.Ct. 148, 69 L.Ed. 411; Gnerich v. Rutter, 265 U.S. 388, 391–392, 44 S.Ct. 532, 68 L.Ed. 1068.

6. Chournos v. United States, 10 Cir., 193 F.2d 321, 323; Cumulative Pocket Supplement to the Code of Federal Regulations, Title 43, § 161.11(a).

To lawfully exercise the rights which he asserts, he must obtain affirmative action by the Secretary of the Interior or by subordinates of the Secretary of the Interior, acting for him.

And, while the decree below is negative in form, in that it enjoins the withholding of permits, its effect is to affirmatively require the issuance of permits.

We conclude that the Secretary of the Interior was an indispensable party defendant.

The judgment is therefore reversed and the cause remanded, with instructions to dismiss the action without prejudice.