**LONE STAR PRODUCING COMPANY, a corporation, Plaintiff,**

v.

**GULF OIL CORPORATION, a corporation, Defendant.**

**Civ. A. No. 2961.**

United States District Court
E. D. Texas,
Tyler Division.
July 17, 1962.

Roy E. Pitts, Archie D. Kroney, D. L. Case, Dallas, Tex., Jack T. Life, Athens, Tex., for plaintiff.

W. B. Edwards, Fred A. Lange, Houston, Tex., for defendant.

SHEEHY, Chief Judge.

Plaintiff, a Texas corporation, hereinafter referred to as Lone Star, instituted this suit seeking to recover from the

Defendant, a corporation organized and existing under and by virtue of the laws of the State of Pennsylvania, hereinafter referred to as Gulf Oil, the sum of $50,815.62 for 16,442.64 barrels of crude oil received and purchased from Plaintiff by the Defendant during the month of December 1960 under a contract in writing dated April 1, 1958, entered into by and between the Plaintiff and the Defendant relating to the sale by Plaintiff and the purchase by the Defendant of crude oils produced from the Opelika and LaRue Fields in Henderson County, Texas, a copy of which contract is attached hereto as Appendix "A" and made a part hereof, together with reasonable attorney's fees in the amount of $7,500.00. The Defendant, by its Answer and Counterclaim filed herein on January 5, 1962, admits that it purchased from Plaintiff the 16,442.64 barrels of crude oil in the month of December 1960 but contends that the purchase price for said oil under its contract with Plaintiff is the sum of $49,171.34 rather than the sum of $50,815.62 alleged by Plaintiff and by its Counterclaim seeks to recover from Plaintiff the sum of $44,522.33 as an alleged overpayment which it alleges that through inadvertence and mistake on its part it paid to Plaintiff for crude oil totalling 445,223.28 barrels it received and purchased from Plaintiff under the contract of April 1, 1958, from the period May 8, 1958, through November 1960, and asked that said sum of $44,522.33 be deducted from and allowed as an offset against its acknowledged indebtedness to Lone Star in the amount of $49,171.34 for crude oil purchased from Lone Star by Gulf Oil during December 1960. Gulf Oil in its cross-action also asked for the recovery of reasonable attorney's fees in the amount of $5,000.00.

Plaintiff, in its Answer to Defendant's Counterclaim, raises a number of defenses including a contention that said Counterclaim is barred by the Texas two year statute of limitation.[1]

The facts, in addition to those above stated, as stipulated by the parties and as found, are as hereinafter stated.

For some time prior to April 1, 1958, and at all times thereafter hereto pertinent Lone Star was engaged in the production of crude oil in the Opelika and LaRue Fields in Henderson County, Texas. As a result of negotiations between them, Plaintiff and Defendant entered into the contract attached hereto as Appendix "A" which became effective on April 1, 1958, under the terms of which Lone Star was to sell and Gulf Oil was to purchase the crude oils produced by Lone Star from the Opelika and LaRue Fields during the existence of said contract with the deliveries of said crude oil to be made by Lone Star from its tanks at its Opelika plant located in the Opelika Field into the pipe line of Gulf Refining Company, a wholly owned subsidiary of the Defendant Gulf Oil Corporation, for the account of Gulf Oil with title to said crude oil passing to Gulf Oil upon delivery of same to the pipe line of Gulf Refining Company. The price Gulf Oil was to pay Lone Star for the crude oil purchased was provided for by the following provisions of the contract, hereinafter referred to as the pricing clause:

"Subject to the adjustment of volume as provided above, Gulf Oil Corporation shall pay to Lone Star Producing Company for each barrel of forty-two (42) United States standard gallons of crude oil delivered hereunder a price per barrel equal to Gulf Oil Corporation's Northeast Texas Area posted price for the gravity received in effect on the date which said crude oil is allocated for pricing purposes, less any transportation cost in excess of five (5) cents per barrel as stipulated in pipe line tariffs of Gulf Refining Company for transportation of the crude oil to its Big Sandy Station."

1. Art. 5526, Vernon's Civil Statutes of Texas, Annotated.

The contract, which was cancelled by Gulf Oil as of January 1, 1961, further provided that Gulf Oil should make payment to Lone Star for the oil purchased under said contract on or before the twentieth day of each calendar month for all crude oil delivered during the preceding calendar month.

In keeping with the contract Lone Star sold to Gulf Oil and delivered to Gulf Refining Company's pipe line at Lone Star's Opelika Plant during the period May 8, 1958, through November 1960, 445,223.28 barrels of oil. Gulf Oil paid Lone Star each month for such oil purchased the preceding month with the payments being made on the basis of Gulf Oil's Northeast Texas Area posted price. In so doing, Gulf Oil made no deductions whatsoever for costs for transporting said oil from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station. Each month when Gulf Oil made payment to Lone Star for the oil purchased the preceding month during the period from May 8, 1958, through November 1960, there accompanied Gulf Oil's check submitted to Lone Star in payment for said oil Gulf Oil's statement which reflected the number of barrels of oil Gulf Oil received from Lone Star each day of the month on which oil was received, the price per barrel and the value of said oil based on said price per barrel. Each such statement had printed on its face the following: "Please examine immediately, as it may be impossible to correct errors after 30 days." Gulf Oil made payment to Lone Star for the full value of the oil as shown by such statements without making any deduction for any costs of transporting said oil from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station. It was Gulf's failure to deduct the portion of the transportation costs incurred by it for transporting the oil from Lone Star's Opelika plant to Gulf Refining Company's Big Sandy Station that it claims it was entitled to deduct under the contract that resulted in the alleged overpayment Gulf Oil made to Lone Star and which forms the basis of Gulf Oil's Counterclaim.

During December 1960 Gulf Oil purchased and received from Lone Star under the contract 16,442.64 barrels of oil which, based upon Gulf Oil's then Northeast Texas Area posted price for such type of oil had an aggregate value of $50,815.62 without any deductions being made for transportation costs. Although Lone Star has made demand in writing of Gulf Oil to pay said sum of $50,815.62 for the oil it purchased from Lone Star during December 1960, which demand was made more than thirty days prior to the institution of this suit, Gulf Oil has refused to pay said sum of $50,-815.62, Gulf Oil alleging and contending that it is only indebted to Lone Star in the amount of $4,649.01, which amount it tendered to Lone Star in March 1961 and which amount Lone Star refused to accept.

On May 6, 1958, Gulf Refining Company duly filed with the Interstate Commerce Commission its Local Pipe Line Tariff I. C. C. No. 44 establishing a rate of 15¢ per barrel for crude oil transported in its pipe line from lease tankage within the territory of Gulf Refining Company's gathering facilities in the Opelika Field to Gulf Refining Company's Big Sandy Station in Upshur County, Texas, for interstate transportation beyond the Big Sandy Station. On May 7, 1958, Gulf Refining Company, by letter of transmittal of that date addressed to the Railroad Commission of Texas, Austin, Texas, transmitted to said Railroad Commission its Texas Local Tariff No. 163 and its Texas Local Tariff No. 164 with the request that said Tariffs, which were to become effective on May 8, 1958, be filed. Said Tariff No. 163 and Tariff No. 164, and each of them, were duly received by the Railroad Commission of Texas at its offices in Austin, Texas, on May 8, 1958. The Railroad Commission duly marked said Tariff No. 164 as being filed but through inadvertence or oversight neglected to formally place a file mark on said Tariff No. 163 until June 28, 1961, although said Tariff

No. 163 remained in the offices of the Railroad Commission in Austin from its receipt in said offices on May 8, 1958, until June 28, 1961. Said Tariff No. 163 provided for a charge of 15¢ per barrel to be made by Gulf Refining Company for crude oil transported in its pipe lines from lease tankage within the territory of the Gulf Refining Company's gathering facilities in the Opelika Field to Gulf Refining's Big Sandy Station.

██ Lone Star does not question the validity of Tariff I. C. C. No. 44 or that it was effective at all times pertinent hereto but does contend that the movements of the oil in question from its Opelika Plant in the Opelika Field to Gulf Refining's Big Sandy Station was not interstate commerce and, therefore, said Tariff No. 44 did not apply to said movements of the oil. While conceding that under the provisions of Sec. 6a of Art. 6049a, Vernon's Civil Statutes of Texas, Annotated, a tariff such as Texas Local Tariff No. 163 becomes effective upon the filing of same with the Railroad Commission of Texas, Lone Star contends that said Tariff No. 163 was not filed with the Railroad Commission until June 28, 1961, and, therefore, said Tariff was not in effect during any of the time hereto pertinent. This contention of Lone Star is without merit. Under the finding above made to the effect that said Tariff No. 163 was received by the Railroad Commission of Texas on May 8, 1958, for filing and thereafter remained in the office of the Railroad Commission, said Tariff was filed with the Railroad Commission on May 8, 1958, even though for some reason the Railroad Commission did not formally place the file mark thereon until June 28, 1961.[2]

██ During all times hereto pertinent Gulf Refining Company presented and maintained a crude oil pipe line extending from Lone Star's Opelika Plant in the Opelika Field in Henderson County, Texas, to its Big Sandy Station located near Big Sandy in Upshur County, Texas, and pipe lines extending from said Big Sandy Station to points in other states, including Gulf Oil's refineries in Cincinnati and Toledo, Ohio. From May 8, 1958, through December 1960 Lone Star delivered to Gulf Refining Company's pipe line at Lone Star's Opelika Plant for the account of Gulf Oil the 461,665.92 barrels of oil, hereinabove referred to, produced by it from the Opelika and LaRue Fields. All of said oil so delivered to Gulf's Pipe Line Company was destined by Gulf Oil for shipment to its refineries in Cincinnati and Toledo, Ohio, and Gulf Refining Company was instructed by Gulf Oil to transport said crude oil purchased from Lone Star to said refineries in Cincinnati and Toledo, Ohio. In keeping with said instructions from Gulf Oil, Gulf Refining Company transported said oil it received from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station and from there transported said oil to Gulf Oil's refineries in Cincinnati and Toledo, Ohio. As the oil purchased from Lone Star was delivered by Lone Star at its Opelika Plant to Gulf Refining Company for the account of Gulf Oil, it was the intention of Gulf Oil that said oil be transported by Gulf Refining Company to Gulf Oil's refineries in Toledo and Cincinnati, Ohio, for processing. Thus the movements of the oil in question in this case from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station was interstate commerce.[3]

The movements of the oil in question from Lone Star's Opelika Plant to Gulf Refining's Big Sandy Station being interstate commerce, Tariff I. C. C. No. 44 was applicable to such movements. Under that Tariff Gulf Refining Company was entitled to charge Gulf Oil

2. Ward v. Atlantic Coast Line Railroad Co. (5th Cir.) 265 F.2d 75; Milton v. United States (5th Cir.) 105 F.2d 253, 255; and Blackburn v. State (Tex.Civ. App.) 72 S.W.2d 627, 629 and authorities therein cited.

3. United Fuel Gas Co. v. Hallanan, 257 U. S. 277, 42 S.Ct. 105, 66 L.Ed. 234; and State of Texas v. Anderson, Clayton & Co., 5 Cir., 92 F.2d 104 (certiorari denied, 302 U.S. 747, 58 S.Ct. 265, 82 L. Ed. 578).

15¢ per barrel for transporting or moving the oil in question from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station. If my finding and conclusion to the effect that the movements of the oil in question from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station constituted interstate commerce is erroneous, then Texas Local Tariff No. 163 is applicable to said movements of said oil and under that Tariff Gulf Refining Company was entitled to charge Gulf Oil 15¢ per barrel for moving said oil from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station.

■ Although the evidence does not show under which Tariff Gulf Refining Company charged Gulf Oil it did charge Gulf Oil and Gulf Oil paid 15¢ for each barrel of oil Gulf Refining Company moved or transported from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station from May 8, 1958, through December 1960. The 15¢ per barrel so charged Gulf Oil by Gulf Refining Company was a transportation cost within the meaning of the pricing clause of the April 1, 1958, contract between Gulf Oil and Lone Star above quoted, notwithstanding Lone Star's contention that if Texas Local Tariff No. 163 is applicable, said Tariff provides for a gathering charge and not a transportation charge. The transportation cost, referred to in said quoted paragraph of said contract can have but only one meaning and that is the amount Gulf Refining Company charged Gulf Oil for moving or transporting the oil from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station, and that is true irrespective of whether such, under the rules and regulations of the Railroad Commission of Texas, is to be considered a charge for gathering of oil or a charge for transporting oil. That being true, the price Gulf Oil, under the contract in question, was required to pay Lone Star for the oil it purchased from it during the existence of said contract, including the oil purchased during the month of December 1960, was the applicable posted price per barrel for said oil, less 10¢ per barrel.

Under the findings and conclusions above made, Gulf Oil is indebted to Lone Star for the 16,442.64 barrels of oil it purchased from Lone Star during December 1960 in the amount of $49,171.35, and Lone Star is entitled to recover that sum from Gulf Oil unless Gulf Oil is entitled to recover in whole or in part on its counterclaim.

In accordance with the terms and provisions of its leases, assignments thereof and contracts pertinent thereto covering lands from which the oil was produced that was sold by Lone Star to Gulf Oil during the month of December 1960, Lone Star paid out to the owners of overriding royalty and royalty interest certain amounts of money and paid to the State of Texas gross production taxes in a certain amount based on Lone Star receiving the applicable posted price per barrel for the oil. As a result of paying the royalty owners and the State of Texas on that basis, Lone Star paid to the royalty owners $439.36 and to the State of Texas $76.55 more than it would have been required to pay said royalty owners and the State of Texas had it made such payments on the basis of the applicable posted price per barrel, less 10¢ per barrel. There is no evidence whether such payments were made before or after Lone Star received Gulf Oil's letter of January 4, 1961, above referred to, and thereby learned of Texas Local Tariff No. 163 and of Gulf Oil's contention that under the contract in question it was entitled to deduct 10¢ per barrel as a portion of the cost of transporting the oil to Gulf Refining's Big Sandy Station and that under the contract the price it was to pay for said oil was the applicable posted price, less 10¢ per barrel. Unquestionably, Lone Star paid the royalty owners and the State of Texas without receiving payment from Gulf Oil for the December 1960 oil runs as Gulf Oil has not yet paid Lone Star for that oil. If Lone Star paid said royalty owners and the State of Texas subsequent to receiving Gulf

Oil's said letter of January 4, 1961, Lone Star clearly would not be entitled to recover the amount of such payments from Gulf Oil. If Lone Star is contending that it is entitled to recover from Gulf Oil for the oil purchased from it during December 1960, the amounts it paid the royalty owners and the State of Texas in addition to the amount per barrel Gulf Oil was obligated to pay Lone Star under the contract for the oil purchased in December 1960, such contention of Lone Star is wholly without merit.

■ ■ For the oil Gulf Oil purchased from Lone Star from May 8, 1958, through November 1960, Gulf Oil paid therefor by making 31 monthly payments to Lone Star. In making these payments Gulf Oil paid the full applicable posted price per barrel for said oil without deducting from said posted price the 10¢ per barrel it, under the contract, was entitled to deduct. Lone Star did not at any time prior to January 1, 1960, know of Tariff I. C. C. No. 44 and Texas Local Tariff No. 163, above referred to, or either of them. There is no evidence that Lone Star at any time prior to January 1, 1960, knew Gulf Oil was paying Gulf Refining Company more than 5¢ per barrel for moving the oil from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station. It was Gulf Oil's Accounting Department that prepared each of the 31 statements that was prepared and sent to Lone Star each month from May 8, 1958, through November 1960, which showed, among other things, the number of barrels of oil that were purchased, the price per barrel being paid and the net value of the oil covered by the statements, said net value being the number of barrels purchased as shown by the statements times the price being paid per barrel as shown by the statements. In each of those 31 statements the price being paid was shown to be the price per barrel that was Gulf Oil's Northeast Texas Area posted price for said oil. Each of the 31 statements sent to Lone Star was accompanied by Gulf Oil's check payable to Lone Star in the amount shown on the statement as the total amount due for the oil purchased during the month covered by the statement. Lone Star accepted each of said checks without question. Gulf Oil's Accounting Department also paid monthly to Gulf Refining Company the 15¢ per barrel that Gulf Refining Company charged Gulf Oil for transporting the oil purchased by Gulf Oil from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station. At all times from May 8, 1958, to January 1, 1960, Gulf Oil's Accounting Department had in its possession copies of the contract of April 1, 1958, between Lone Star and Gulf Oil, above referred to, Tariff I. C. C. No. 44 and Texas Local Tariff No. 163 and had full knowledge of said contract and Tariffs and the provisions of each of them. During that period of time said Accounting Department had full knowledge of Gulf Oil's Northeast Texas Area posted price for crude oil of the gravity of that purchased by Gulf Oil from Lone Star. In other words, at all times from May 8, 1958, to January 1, 1961, Gulf Oil, and particularly its Accounting Department, had full and complete knowledge of all of the facts pertinent to and necessary for a determination of the price Gulf Oil was to pay Lone Star for the oil it purchased from Lone Star during that period of time under the contract in question. Notwithstanding that knowledge Gulf Oil, acting through its Accounting Department, paid to Lone Star for the 445,223.28 barrels of oil it purchased from Lone Star from May 8, 1958, through November 1960, 10¢ per barrel more than, under the contract in question, it was required to pay Lone Star, thus resulting in an overpayment by Gulf Oil to Lone Star in the amount of $44,522.33. It is this overpayment that is the subject matter of Gulf Oil's Counterclaim. There is no competent evidence showing why Gulf Oil made such overpayment other than a statement in a letter from Gulf Oil to Lone Star under date of January 4, 1961, to the effect that Gulf inadvertently overlooked the 10¢ per barrel decrease in

price it was entitled to in its accounting to Lone Star for the oil purchased from Lone Star for the period May 8, 1958, through November 30, 1960. No one from Gulf Oil's Accounting Department, the department responsible for the overpayment, was called to testify as to the reason for the overpayment. There is no evidence that said overpayment was made by reason of any fraud, deception, duress or coercion, practiced upon Gulf Oil or any of its employees by Lone Star or any one else. Therefore, I find and conclude that said overpayment was voluntarily paid by Gulf Oil with full knowledge of all the facts material to and necessary for determining the price or amount Gulf Oil was to pay Lone Star for the oil it purchased from Lone Star from May 8, 1958, through November 1960 under the contract between Gulf Oil and Lone Star, above referred to. Therefore, Gulf Oil is not entitled to recover on its Counterclaim because it is a well recognized rule of law that money voluntarily paid with full knowledge of all the facts, and without fraud, deception, duress or coercion, cannot be recovered back even though there was no liability to pay.[4]

■ ■ Furthermore, a recovery for all of that portion of the overpayment forming the basis of Gulf Oil's Counterclaim that was paid prior to Gulf Oil filing its Counterclaim on January 5, 1962, namely the sum of $31,298.26, is barred by the Texas two year statute of limitation.[5] Gulf Oil's contention that the action forming the basis of its Counterclaim is founded upon the contract of April 1, 1958, above referred to, and, therefore, the four year statute of limita-

tion[6] as applicable to said Counterclaim is without merit. It is well established in Texas that for an action to be one for an indebtedness evidenced by or founded upon a contract in writing, as referred to in the four year statute of limitation, the suit must be between the immediate parties to the contract, or those for whose benefit it was made, or their privies, *and the written instrument relied upon must itself contain a contract to do the thing for the nonperformance of which the action is brought.*[7] The basis of Gulf Oil's Counterclaim is the overpayment by Gulf Oil for oil purchased from Lone Star under the contract in question. Under such contract it was Gulf Oil's duty, not the duty of Lone Star, to deduct from the Northeast Texas Area posted price of the oil purchased all costs of transporting said oil from Lone Star's Opelika Plant to Gulf Refining Company's Big Sandy Station in excess of 5¢ per barrel and pay to Lone Star as the price for said oil said posted price less such transportation costs in excess of 5¢ per barrel. It was not Lone Star's duty or responsibility under the contract to make any payment to Gulf for transportation costs. There is no nonperformance on the part of Lone Star of any obligation placed on Lone Star by the contract in question which forms the basis of the Counterclaim. As above indicated, Gulf Oil made a voluntary overpayment to Lone Star for oil purchased by it from Lone Star under the contract—a payment it was under no duty or obligation to make. It is the amount of this overpayment that Gulf Oil is seeking to recover in its Counterclaim; thus its Counterclaim is nothing more than an action for money

---

4. United States v. Edmondston, 181 U.S. 500, 21 S.Ct. 718, 45 L.Ed. 971; Shell Oil Co. v. Cy Miller, Inc. (9th Cir.) 53 F.2d 74; Lawrence v. J. M. Huber Corp. (Tex.Civ.App.) 347 S.W.2d 5; Wheeler v. Metteauer (Tex.Civ.App.) 283 S.W.2d 95; Ward v. Tadlock (Tex.Civ.App.) 183 S.W.2d 739; Gibson v. General American Life Ins. Co. (Tex.Civ.App.) 89 S.W.2d 1070 (Writ of Error dismissed); 40 Am. Jur. § 157, pp. 820 and 821; and 32 Tex. Jur. § 48, pp. 727 and 728.

5. Art. 5526, Vernon's Civil Statutes of Texas, Annotated.

6. Art. 5527, Vernon's Civil Statutes of Texas, Annotated.

7. Cowart v. Russell, 135 Tex. 562, 144 S.W. 2d 249, 250; and Shaw v. Bush (Tex.Civ. App.) 61 S.W.2d 526, 528 (Writ of Error refused) and cases therein cited.

had and received. The only connection the contract had with the overpayment is that because of such contract Gulf was purchasing oil from Lone Star and but for the fact that Gulf was purchasing said oil from Lone Star the overpayment would not have been made. The contract did no more than furnish the occasion for the overpayment and the resulting Counterclaim. Such contract did not furnish the spring or basis of the Counterclaim. While it is true that the Texas courts have given a rather liberal construction to the words "evidenced by or founded upon any contract in writing" as used in the four year statute, they have never gone so far as to hold that an action comes within the statute where the written contract did no more than furnish the mere occasion for the action as distinguished from furnishing the spring for or the basis of the action.[8] The two year statute of limitation is applicable to Gulf Oil's Counterclaim.[9]

The findings and conclusions above made make it unnecessary to discuss or pass upon any of the other contentions made by the parties hereto except the contention of Lone Star to the effect that it is entitled to recover attorney's fees. In connection with the contention of Lone Star as to attorney's fees, it was stipulated by the parties that if Lone Star were entitled to recover attorney's fees in this cause, a reasonable attorney's fee would be the sum of $7,500.00.

In order for Lone Star to be entitled to recover attorney's fees, the crude oil that it sold Gulf Oil under the contract in question must constitute "material furnished" within the meaning of Art. 2226, Vernon's Civil Statutes of Texas, Annotated. The evidence shows, as above indicated, that said crude oil was purchased by Gulf Oil and transported to Gulf Oil's refineries in Ohio for processing. Such crude oil was "material furnished" within the meaning of said Art. 2226.[10] Therefore, Lone Star is entitled to recover attorney's fees in the amount of $7,500.00.

Judgment will be entered allowing Lone Star a recovery from Gulf Oil in the amount of $56,671.35 with interest thereon at the rate of 6% per annum from date of judgment; denying Gulf Oil's Counterclaim in its entirety; and adjudging all costs of Court against Gulf Oil.

This Memorandum Decision will constitute the Findings of Fact and Conclusions of Law in this cause as authorized by Rule 52, F.R.Civ.P., 28 U.S.C.A.

---

8. Reconstruction Finance Corp. v. Peterson Bros. (5th Cir.) 160 F.2d 124, 126.

9. Clanton v. Community Finance & Thrift Corp. (Tex.Civ.App.) 262 S.W.2d 252, 253; Settegast v. Harris County (Tex. Civ.App.) 159 S.W.2d 543 (Writ of Error refused).

10. Texas Gas Corp. v. Hankamer (Tex.Civ. App.) 326 S.W.2d 944, 959 (Writ of Error refused, N.R.E.).