UNITED STATES of America,
Appellant,

v.

Alton MORRELL, Appellee.

UNITED STATES of America,
Appellant,

v.

Nick CHOURNOS, Appellee (two cases).

Nos. 7419–7421.

United States Court of Appeals
Tenth Circuit.

April 28, 1964.

Richard S. Salzman, Atty., Dept. of Justice (John W. Douglas, Asst. Atty.

Gen., William T. Thurman, U. S. Atty., and Alan S. Rosenthal, Atty., Dept. of Justice, with him on the brief), for appellant.

Milton A. Oman, Salt Lake City, Utah, for appellees.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The problems of the open range are with us again. Plaintiffs-appellees sued under the Federal Tort Claims Act[1] to recover for trespasses on their lands by stock of the holders of permits under the Taylor Grazing Act.[2] The claims are that federal officials aided and abetted the trespasses. The government says, among other things, that the officials did no more than issue the permits and that such actions are the exercise of discretionary functions for which no recovery is allowed.[3] Trial was to the court. Morrell recovered judgment for $97,500 and Chournos for $218,400. These appeals followed.

Although the suits are framed under the Tort Claims Act, the controversy is over rights to graze livestock on the public domain. Such use of the public domain is governed by the Taylor Grazing Act which places responsibility for the administration of federal range lands on the Secretary of the Interior who is authorized to establish grazing districts and issue permits to graze livestock.[4] Regulations issued by the Secretary to carry out the purposes of the Taylor Grazing Act are known as "The Federal Range Code for Grazing Districts."[5] The Range Code provides for two types of licenses or permits which are pertinent to our problem. "Regular licenses and permits," herein referred to as preferential permits, are issued to applicants meeting certain qualifications.[6] "Exchange of use licenses" are issued to applicants "having ownership or control of non-Federal land interspersed and normally grazed in conjunction with the surrounding Federal range."[7] All grazing licenses and permits are granted by the district range managers, employees of the Bureau of Land Management, upon the advice of a statutory board of advisors elected from among the stockmen using the grazing district.[8] The advisory board must always be consulted but its recommendations are not binding on the district manager.[9] The Range Code provides for appeals from adverse decisions of the district managers through administrative officials up to the level of the Secretary of the Interior.[10]

In No. 7419 Morrell sued for trespasses occurring after June 23, 1958. He is a cattle rancher and had leased from the State of Utah some 20,000–25,000 acres of grazing land in Emery and Wayne counties. This leased land was widely interspersed among federal lands located within an area denominated as Utah Grazing District No. 7. The district manager issued licenses and preferential permits to other livestock operators for grazing of cattle on an annual basis in District No. 7. Morrell was denied exchange of use permits for the summer season. The range is unfenced and the cattle are not herded. Inevitably, cattle released on the public domain stray on and graze from Morrell's land. Similarly, cattle released on Morrell land enter the federal range. The federal officials have taken action to prevent trespasses by Morrell stock.

In No. 7420 Chournos sued for trespasses occurring for two years prior to

1. 28 U.S.C. §§ 1346(b) and 2671 et seq.

2. 43 U.S.C. § 315 et seq.

3. 28 U.S.C. § 2680(a).

4. 43 U.S.C. §§ 315, 315a, and 315b.

5. 43 C.F.R. §§ 161.1–161.19.

6. 43 C.F.R. § 161.6(b).

7. 43 C.F.R. § 161.6(c).

8. 43 U.S.C. § 315o–1; 43 C.F.R. §§ 161.9, 161.13.

9. 43 U.S.C. § 315o–1(b); 43 C.F.R. § 161.-9(a). Applications by district advisors are first considered by the district manager without reference to the advisory board.

10. 43 C.F.R. § 161.10.

July 15, 1960, and in No. 7421 for trespasses occurring for two years prior to December 15, 1962. Chournos, a sheep operator, owns approximately 70,000 acres and leases from the State of Utah about 21,000 acres in Box Elder County and Utah Grazing District No. 1. His lands are interspersed with the federal range and other private holdings in a checkerboard fashion.[11] As in the case of Morrell, the absence of fences and herding results in grazing on both the federal range and the lands of Chournos. The federal officials granted licenses and preferential permits to others, denied exchange of use permits sought by Chournos, and took action to prevent trespasses by Chournos' stock on the public domain.

The three cases were tried together and are here on a consolidated record. The findings of fact and conclusions of law made in each case present no important differences so far as the controlling issues are concerned.

Range wars will probably continue as long as open range exists. The Taylor Grazing Act was intended to provide stability and "to permit the use of the public range according to the needs and the qualifications of the livestock operators with base holdings."[12] Difficulty arises when the federal officials must decide between competing applications for the use of the federal range. Where federal and private holdings are commingled in an unfenced area of limited carrying capacity, stock will foreseeably and inevitably graze without regard to boundary lines. As a practical matter neither the plaintiffs' lands nor the federal lands can be grazed separately.

Provisions of the Range Code for administrative appeals do not solve the problem. The cattle and sheep still trespass. Recourse to the Tort Claims Act is met by the assertion that acts of federal officials in granting or denying permits are discretionary functions or duties for which there is no liability "whether or not the discretion involved be abused."[13] We have three times denied relief under the Tort Claims Act in grazing disputes.

In Oman v. United States, 10 Cir., 179 F.2d 738, we held that a complaint under the Tort Claims Act stated a claim and should not have been dismissed. There, the complaint asserted interference with plaintiffs' grazing rights while their federal permit remained outstanding and unrevoked. On trial it was held that the permit was not exclusive and recovery was denied. We affirmed, Oman v. United States, 10 Cir., 195 F.2d 710.

In Chournos v. United States, 10 Cir., 193 F.2d 321, certiorari denied 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369, a tortious denial of a permit was asserted and we held the grant or denial of a grazing permit was a discretionary function within the contemplation of § 2680 (a). In Powell v. United States, 10 Cir., 233 F.2d 851, the controversy was over the right to graze placer mining claims and we held the suit could not be maintained because of § 2680(a).

Here we are confronted for the first time with the claim that recovery may be had under the Tort Claims Act when the federal officials knew, at the time of issuance of permits to others, the stock would stray upon the lands of the plaintiffs. The government does not question the findings of the trial court that the public domain in question cannot be grazed without the stock grazing the intermingled lands of the plaintiffs. Although the trial court found that the

11. Much of Chournos' land was acquired from the Southern Pacific Land Company. The situation is detailed in our opinion in Chournos v. United States, 10 Cir., 193 F.2d 321, 322, certiorari denied 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369.

12. Chournos v. United States, 10 Cir., 193 F.2d 321, 323, certiorari denied 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369.

13. 28 U.S.C. § 2680(a) provides that the Tort Claims Act does not apply to: "Any claim based * * * upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

federal officials "wrongfully and unlawfully encouraged, directed, incited, aided, promoted and advised third persons to wrongfully go upon plaintiff's said lands with substantial numbers of cattle, without plaintiff's consent," the record discloses that the officials did no more than issue the permits.[14] We have held that the grant or denial of a permit is a discretionary function beyond the purview of the Tort Claims Act.[15] The narrow issue here is whether the Tort Claims Act permits recovery when permits are issued to third parties under conditions which make the federal officials aware that the livestock of the permittees will graze on private lands.

■ Preliminarily we point out that the claims of the plaintiffs to preferential rights, and the findings of the trial court that they are entitled to preferential rights, are beside the point. Rights to the use of the public domain must be determined in accordance with the provisions of the Taylor Grazing Act and the Range Code.

■ The problem posed is difficult of solution. The plaintiffs, the United States, and the permittees of the United States, all have rights. The value of the public domain in suit for grazing purposes is recognized by all parties. The grant of grazing permits is a use of the public domain for the benefit of the United States, which receives a fee from the holders of preferential permits, and of those holding grazing permits.[16]

Although it has been held that if a lessee trespasses on land other than that included in his lease, "such trespass is his own act for which he alone is liable," [17] an owner cannot escape liability by showing that he did not personally create the condition or commit the wrongful act, if the expected operations under the lease result in an injury that might have been reasonably anticipated.[18] In the cases before us the results were within the area of reasonable anticipation. This anticipation, however, occurred when the officials were exercising the discretionary powers delegated to them.

Plaintiffs rely on Hatahley v. United States, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065, and Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354. Hatahley was concerned with wrongful trespasses unrelated to discretionary action. Rayonier had to do with negligence of federal fire fighters. Here we have a situation which resulted from the performance of a discretionary act, the grant of the permits.

The two United States district judges for the District of Utah have come to different conclusions on the problem at hand. In Kunzler v. United States, D.C. Utah, 208 F.Supp. 79, appeal dismissed on motion of appellant, 307 F.2d 511, Judge Christensen was confronted with the same basic issue that we have here. He held that the acts of the federal officials were discretionary and recovery barred by § 2680(a).[19] Chief Judge

14. Plaintiffs claim that the federal officials managed the range. There is no evidence that the federal officials, by regulating water holes, placing salt, or doing any acts other than the grant of the permits, did anything which resulted in the trespasses asserted.

15. Chournos v. United States, 10 Cir., 193 F.2d 321, 323–324, certiorari denied 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369.

16. 43 C.F.R. § 161.8. The holders of exchange of use permits do not pay a fee. 43 C.F.R. § 161.6(c).

17. Brownlee v. Landers, Tex.Civ.App., 166 S.W.2d 734, 737.

18. Green v. Asher Coal Mining Co., Ky.Ct. App., 377 S.W.2d 68. See also 53 A.L.R. 327.

19. Judge Christensen said, 208 F.Supp. 85: "Accordingly, it is concluded that the agents of the government were guilty of no acts or omissions which could be considered to have negligently or intentionally caused damage to the plaintiff as asserted herein by him, except that they granted grazing permits to the James brothers and denied grazing permits to the plaintiff with reference to the Bovine Summer Unit for the season of 1960. I further conclude that such acts and decisions were based upon and performed within the powers and discretion imposed

Ritter reached a contrary conclusion in the cases at bar.

 The plaintiffs are trying by these actions to establish their rights to permits for grazing the public domain. This is inherent in their presentation. They insist that their rights have been denied; and they seek recovery, not for the value of the forage consumed on their land but for the loss of profits which they say they would have made if the permits which they seek had been granted to them. The use of the Tort Claims Act for the determination of such rights cannot be sustained. Those to whom the preferential permits have been issued are not parties and cannot be heard. If the plaintiffs are upheld and the preferential rights taken away from the present holders, those persons might well sue under the Tort Claims Act and thus subject the government to inconsistent recurring liabilities. In our opinion the open range cannot be administered on the basis of court decrees in individual tort actions.

The plaintiffs make out strong prima facie cases of abuse of discretion on the part of the federal officials in granting preferential permits to others and in refusing exchange of use permits to them. We do not know whether discretion was abused because we do not have before us evidence of the rights of others or evidence of the reasons for the actions taken by the officials. The point is that abuse of discretion does not impose liability on the United States.

All that the officials are shown to have done is to grant permits to persons whose cattle trespassed on the lands of the plaintiffs. These permits covered only federal land. The issuance of the permits was discretionary. Knowledge of conditions which will result from the performance of discretionary duty does not eliminate the discretionary character of the act done. The Tort Claims Act

bars recovery from the United States for the discretionary acts of its agencies and employees regardless of whether the discretion be abused. Accordingly, these actions may not be maintained under the Tort Claims Act. In the circumstances it is not necessary to consider the issues relating to damages.

The judgment in each case is reversed and each case is remanded with instructions to dismiss the complaint.

upon such agents by the laws of the United States and regulations duly adopted pursuant thereto, and that they constituted discretionary acts within the contemplation of 28 United States Code § 2680 (a), irrespective of whether such discretion was abused."