**COASTWISE PACKET COMPANY, Inc.,**
Plaintiff, Appellant,

v.

**UNITED STATES of America,**
Defendant, Appellee.

No. 7094.

United States Court of Appeals
First Circuit.

July 11, 1968.

Certiorari Denied Nov. 12, 1968.

See 89 S.Ct. 300.

---

23. Neither the government nor its appraisers moved to quash or modify the subpoenas. See Rule 45(b).

Daniel F. Featherston, Jr., Boston, Mass., for appellant.

Robert V. Zener, Atty., Dept. of Justice, with whom Edwin L. Weisl, Jr., Asst. Atty. Gen., Paul F. Markham, U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Plaintiff appellant Coastwise Packet Co., Inc., owner of the sailing vessel SHENANDOAH, sought the certificate of inspection from the Coast Guard which is required before carrying passengers for hire. 46 U.S.C. § 390 et seq. The vessel's plans were furnished in 1963 when construction began. From time to time the Coast Guard requested additional information, the last being supplied in June 1964, following which tests were performed on the completed vessel. On July 7, 1964 the Coast Guard refused to certify, stating that the vessel was not stable enough to right herself from a knockdown. SHENANDOAH showed resilience of 57°; the Coast Guard demanded 90°. After an appeal to the Commandant of the Coast Guard the vessel was certified in February 1965 upon certain acceptable conditions. Meanwhile, SHENANDOAH had lost a whole season's use in the "windjammer" trade, that is, coastwise cruising with paying passengers, for which the certificate was sought. Plaintiff brings this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. for damages occasioned by the delay. The district court granted summary judgment for the defendant, 277 F.Supp. 920, and plaintiff appeals.

The first count in the complaint, which is all that need be considered, is in 60 numbered paragraphs. As amplified by extensive correspondence, a number of other exhibits, and a deposition of a Coast Guard officer, plaintiff's essential claim is that through alleged negligence and vacillation in applying various safety standards the Coast Guard improperly delayed certification, causing the loss of a season's profitable use. Certain additional allegations, that plaintiff was misled as to the nature of the standards, and that the vessel's repute was injured by inaccurate publicity, at best do not add to the cause of action. Viewed of themselves they fail by virtue of 28 U.S.C. § 2680(h), precluding governmental liability for misrepresentation. United States v. Neustadt, 1961, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614. On the other hand, we agree with the plaintiff that the district court erred in relying upon this section of the act to dismiss the entire complaint. The primary claim asserted is for negligent

delay. We cannot think that because, without legal basis, plaintiff's allegations compound the Coast Guard's misbehavior, the "claim of misrepresentation is essential to * * * a cause of action." The misrepresentations did not occasion the delay even though, conceivably, some additional loss may have been due thereto.

■ Similarly, we agree with the plaintiff that it is not precluded by the subsection's interdiction of actions for "interference with contract rights." The damage asserted is the loss of use of the vessel. The only relevance of the fact that plaintiff anticipated profits from already executed passenger contracts is as evidence of the value of that use. It cannot be, for example, that if this were a day boat, likely to be but not yet profitably employed, the statute would have permitted recovery for the delay, but if contracts had already been made suit would be forbidden.

■■ The remaining question is the correctness of the court's alternative holding that plaintiff is precluded because its cause of action falls within subsection (a) of section 2680.

"Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

For this purpose we must accept, this being a motion for summary judgment, plaintiff's allegations that the tests or standards imposed by the Coast Guard's lower echelon were unreasonably severe, were not developed as rapidly as they should have been, and were negligently applied, all cumulating in delay until, as a result of internal appeal, certification was eventually achieved. However, the conduct so described seems precisely within an area where the Coast Guard was exercising a discretionary function.

Plaintiff's is not a case where there was a single, known, objective standard which, because of administrative negligence, the Coast Guard failed to apply. In such an area there might be questions. When no standard exists, then the process of certifying, insofar as it involves groping for a standard, is within the discretionary exemption of the Act. Plaintiff makes no answer to the deposition of the Coast Guard officer that SHENANDOAH carried "a cloud of canvas. She carries the usual working sails of a schooner, a main, a fore apparently, though the nomenclature may vary for topmast, a staysail, a jib and a flying jib. She also carries very high, a square topsail, and a main gaff topsail. This canvas is extremely high. * * * Q. The fact that the sail is high on the mast tends to give wind pressure against the higher sail more of a push overall than wind pressure on a lower sail? A. That is correct. * * *. Q. Are the Coast Guard regulations worded and applied in such a manner that the stability qualifications of an individual vessel are determined on the characteristics of that vessel, as opposed to a fixed standard that is applied to every vessel? A. The regulations are, in fact, written so that where a determination is made there are special features in any vessel, whether sail or power, that the Commandant may require such additional information as is needed to show the safe service of the vessel. They are rather flexible and they must be, since this covers not only the field of sails but such things as container ships and so forth, a moving art and science, and this flexibility is necessary for us to realistically evaluate a good number of vessels. Q. Had there been any vessels similar to the SHENANDOAH, that had applied for certification by the Coast Guard, either to OCMI, mmt or to MMT, before the SHENANDOAH, to the best of your knowledge? * * * A. To the best of my knowledge, no vessel similar to the SHENANDOAH has been proposed for certification, either before or since."

The nature of the Coast Guard's undertaking is further demonstrated by the outcome. When, in February 1965, the

certificate was authorized, the following restrictions were imposed:

"1. No sail other than the flying jib, jib, fore staysail, fore sail, mainsail, fore topgallant, fore topsail and main gaff topsail as shown on the Bijhouwer and Lee Sail Plan submitted to the Coast Guard on June 28, 1964 shall be set. Specifically, no main topmast staysail shall be set * * *.

2. In winds of over 15 knots or with squally weather imminent the fore topsail, fore topgallant and main gaff topsail shall not be used. Under such conditions no more than two of the three headsails shall be used."

Plaintiff's citations are not helpful to it. This is not a case where plaintiff's property suffered damage from the negligent performance of an act the Coast Guard had undertaken after policy had been established, Indian Towing Co. v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48; United States v. Sandra & Dennis Fishing Corp., 1 Cir., 1967, 372 F.2d 189, cert. denied 389 U.S. 836, 88 S.Ct. 52, 19 L.Ed.2d 98, but, at best, so far as plaintiff was concerned, is one of consequential loss due to the negligent or too zealous effort to formulate a rule. This effort by the Coast Guard was undertaken at the command of Congress, 46 U.S.C. § 390b, 46 C.F.R. 74.10–11, and, in our opinion, is precisely the sort of discretionary function that Congress exempted. Smith v. United States, 5 Cir., 1967, 375 F.2d 243, cert. denied 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106; United States v. Morrell, 10 Cir., 1964, 331 F.2d 498, cert. denied Chournas v. United States, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86; see Eastern Steamship Corp. v. United States, 178 Ct.Cl. 599,

---

* See, also, H.R.Rep. No. 2245, 77th Cong. 2d Sess. 10, 16–17. "The bill is not intended to authorize a suit for damages to test the validity of or provide a remedy on account of such discretionary acts [negligent use of blacklisting power by the Treasury] even though negligently

372 F.2d 1002, 1010, 1967; cf. Dupree v. United States, 3 Cir., 1957, 247 F.2d 819, 824–25.* One can well understand why Congress would not want to place a regulatory agency in the dilemma of exposing the government to tort suits by disappointed applicants if the agency is over-cautious or, in the alternative, by injured third parties if it is not cautious enough. Plaintiff's case must fail by virtue of section 2680(a).

Affirmed.

performed and involving an abuse of discretion. Nor is it desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.