William C. **MAGELLSEN**, Plaintiff,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION et al.**, Defendants.

Civ. No. 935.

United States District Court,
D. Montana,
Billings Division.
April 27, 1972.

Charles F. Moses, Sandall, Moses & Cavan, Billings, Mont., for plaintiff.

Cale Crowley, Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for F. D. I. C. and Roger B. West.

George Manuel, pro se.

## MEMORANDUM OPINION AND ORDER

BATTIN, District Judge.

Plaintiff brings this action against these defendants with jurisdiction based on the Federal Deposit Insurance Act, 12 U.S.C. § 1811, et seq. Specifically, jurisdiction is based on Section 1819, which makes Federal Deposit Insurance Corporation (F.D.I.C.) a corporation which can sue and be sued.

Plaintiff was the major shareholder, managing director and creator of two banks. He applied for insurance with F.D.I.C. on January 15, 1970. This insurance was not favorably acted upon until November 25, 1970. Plaintiff alleges:

1. That defendants F.D.I.C. and West delayed arbitrarily and unreasonably in acting upon his applications;

2. That defendants F.D.I.C. and West negligently failed and refused to act on the applications;

3. That defendant West deliberately aroused suspicion against plaintiff and discriminated against him in applying the rules and regulations of F.D.I.C.;

4. That defendants F.D.I.C. and West violated 12 U.S.C. § 1820 by not administering these regulations fairly, impartially, and without discrimination; and

5. That by this procedure defendants F.D.I.C. and West violated the Fourteenth Amendment and deprived plaintiff of a fair hearing through selective enforcement of the regulations, oppressive demands, discriminatory policies towards plaintiff, and arbitrary and unfair treatment of plaintiff's application.

Plaintiff also alleges that this action made him vulnerable to various "con artists", including defendant Manuel. Defendants allegedly knew of Manuel's reputation; plaintiff argues that they should have told him of the danger in

dealing with Manuel. Plaintiff alleges that had defendants provided him with this information, he would have terminated his dealings with Manuel. As a result of his dealings with Manuel, plaintiff alleges that he suffered the injuries set out in the complaint. Finally, plaintiff alleges that, because of this dealing and his subsequent loss, the F. D. I. C. investigated plaintiff and suspended him from banking operations.

Defendant F.D.I.C. maintains that the complaint should be dismissed as to it, since plaintiff has not filed a claim with the agency as required by 28 U.S.C. § 2401(b), as amended July 18, 1966, Pub. L. 89–506, Section 7, 80 Stat. 307, and 28 U.S.C. § 2675(a), as amended July 18, 1966, Pub.L. 89–506, Section 2, 80 Stat. 306.

Defendant West maintains that he is immune from suit by virtue of the fact that he was acting within the scope of his office with relation to general matters under his control and supervision by law and by rules and regulations of the F.D.I.C.

■ It is the opinion of the court that F.D.I.C. cannot be sued directly, since it is a federal agency. Therefore, it comes within the definition of the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., and any suit must be instituted against the United States rather than the F.D.I.C. itself. In Freeling v. F. D. I. C., 221 F.Supp. 955 (W.D.Okl.1962), aff. 326 F.2d 971 (10th Cir. 1963), the court in a slander suit against F.D.I.C. ruled, on a motion to dismiss, that F.D.I.C. could not be sued directly under the Federal Tort Claims Act. The court decided that F.D.I.C. was a federal agency under the definition of the Federal Tort Claims Act. The court noted that, prior to the passage of the Federal Tort Claims Act in 1946, a federal agency could be sued under the "sue and be sued" clause of the creating legislation. The Federal Tort Claims Act, however, withdrew this right with regard to tort claims against federal agencies. Therefore, suit must be directed against the United States and not

against its agent when the action is for monetary damages arising out of a tort.

The court went on to state:

"There can be no doubt, from reading the report [Senate Report 1400, 79th Congress, Second Session], but that Congress intended to place federal agencies with a 'sue and be sued' clause in the same position as federal agencies without such authority, if the action was a tort action for money damages. If the particular tort action happened to be excluded by a section of the Act, such as Section 2680, the plaintiff would have to support jurisdiction on the basis of another act. In no instance would the 'sue and be sued' clause nor the corporate status support jurisdiction.

"I am of the opinion that the plaintiff cannot maintain this action directly against the Federal Deposit Insurance Corporation, even though recovery may be precluded under the Federal Tort Claims Act if the plaintiff attempted to proceed directly against the United States. The Federal Tort Claims Act is the exclusive remedy available to the plaintiff, and the 'sue and be sued' clause will not support jurisdiction."

221 F.Supp. at 957. Accord, James v. F. D. I. C., 231 F.Supp. 475 (W.D. La.1964).

In contradiction to this proposition, plaintiff cites In re Anjopa Paper & Board Mfg. Co., 269 F.Supp. 241 (S.D. N.Y.1967). This case dealt with an appeal by F.D.I.C. from the decision of the Referee in Bankruptcy. F.D.I.C. was a receiver of a bank which had received alleged preferential assignments from Anjopa who had been declared bankrupt. The finding was against F.D.I.C., which claimed, among other things on review, that the referee's findings were invalid, since it could not be proceeded against as the United States in state procedings. The court ruled that F.D.I.C. was not protected by sovereign immunity but stood in the position of the bank. The cases cited by the court in support of its

proposition were decided prior to the passage of the Federal Tort Claims Act and are inapposite to the present case. Moreover, *Anjopa* is not applicable to the situation at hand because it is not a tort action. 269 F.Supp. at 252–254.

■ Defendant West maintains that he is immune from suit because he was acting in the scope of his authority and in regard to matters submitted to his discretion and control by law and by those regulations of the F.D.I.C. From defendant West's uncontroverted affidavit, it appears that he was acting within his discretion. Section 2680 of 28 U.S.C. provides that:

> "The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> "(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.*" (Emphasis supplied.)

This provision of the Federal Tort Claims Act was construed first by the United States Supreme Court in Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). That case was an action seeking damages from the United States for the death of Dalehite in a fertilizer explosion. Suit was filed under the Federal Tort Claims Act, and Section 2680 was pleaded as a defense. Plaintiffs claimed negligence on the part of federal officials and employees involved in a program of fertilizer production in which a fire and explosion occurred. The fertilizer was produced and distributed under the specifications and control of the United States. Under Congressional authority, a program had been created to experiment with, and subsequently to produce, nitrate-based fertilizers. No specific acts of negligence could be shown and the suit alleged that the Government was liable because of its participation in the manufacture and transportation of the fertilizer. The negligence charged was that the United States, without proper investigation of the properties of the fertilizer, allowed it to be shipped through a congested area without warning of the possibility of explosion under certain conditions.

The Supreme Court ruled that plaintiffs' claim was barred by Section 2680 of the Federal Tort Claims Act. The Court noted that there were two types of acts of government employees which were excepted from liability. The first exception included "acts or omissions of government employees, exercising due care in carrying out statutes or regulations whether valid or not. 346 U.S. at 33, 73 S.Ct. at 966. The purpose of this exception was to prevent tort action testing the legality of statutes and regulations. The second exception involved acts of discretion in performance of governmental functions or duties, *whether or not this discretion was abused.* The Court noted that "[n]ot only agencies of government are covered but all employees exercising discretion." Id. This clause of Section 2680 was held to include both negligent and wrongful acts by employees, if done in the exercise of their discretion. The Court added, with reference to the intent of Congress,

> "So we know that the draftsmen did not intend it [Section 2680] to relieve the Government from liability for such common-law torts as an automobile collision caused by the negligence of an employee, see [346 U.S.] p. 28 [73 S.Ct. 964], *supra*, of the administering agency. We know it was intended to cover more than the administration of a statute or regulation because it appears disjunctively in the second phrase of the section. The 'discretion' protected by the section is not that of

the judge—a power to decide within the limits of positive rules of law subject to judicial review. It is the discretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law." 346 U.S. at 34, 73 S.Ct. at 967.

In defining the scope of its decision, the Court went on to say:

"It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion." 346 U.S. at 35–36, 73 S.Ct. at 968.

Chapter III of 12 C.F.R. sets forth the basic regulations of F.D.I.C. Under 12 C.F.R. § 303.10, upon application by a bank for deposit insurance, the Division of Bank Supervision F.D.I.C., will cause an investigation to be conducted and an examination to be made of the bank or proposed bank. On this basis, the Board of Directors, F.D.I.C., in accordance with the applicable provisions of law, will act upon the application. Moreover, the Regional Director, F.D.I.C., makes recommendations which are considered by the Board of Directors. The factors to be considered in determining whether to grant an application for insurance are set forth in 12 U.S.C. § 1816. These include:

"The financial history and condition of the bank, the adequacy of its capital structure, its future earnings prospects, the general character of its management, the convenience and needs of the community to be served by the bank, and whether or not its corporate powers are consistent with the purposes of this chapter [Chapter 967, 64 Stat. 873 et seq.]."

Suspension of an officer of a bank for violation of law, rules or regulations of F.D.I.C., or found unsound and unsafe practice with regard to the bank which has or will cause substantial loss to the bank or other damage, is within the power of the Board of Directors under 12 C.F.R. § 308.36.

Examination of the complaint reveals that each one of the actions charged was within the discretion of either the Regional Director, defendant West, or the Board of Directors of F.D.I.C. In Paragraph XI of the complaint, five separate acts are set forth which allegedly injured plaintiff. The first involves the decision as to whether the application should be granted. This decision is relegated to the discretion of the Board. The second alleges a failure to act upon the application. Again, action upon an application is within the discretion of the Board. The third alleges that defendant West aroused resentment, suspicion and hostility towards plaintiff and discriminated against him in applying the rules and regulations of F.D.I.C. Application of the F.D.I.C. regulations is a discretionary, regulatory function of the Regional Director and is committed to him by the rules and regulations of F.D.I.C. It is the Regional Director's duty under 12 C.F.R. § 303.10 to make recommendations to the Board of Directors for use in considering applications of proposed banks for deposit insurance. It follows that the Regional Director must make in-

quiries concerning the bank upon which to base this report. Whether he abused his discretion in making such inquiries is immaterial since he was using his discretion in relation to matters under his supervision and control. O'Campo v. Hardisty, 262 F.2d 621 (9th Cir. 1958), citing Standard Nut Margarine Co. of Florida v. Mellon, 63 App.D.C. 339, 72 F.2d 557 (1934).

■ The fourth alleges that neither defendant West nor defendant F.D.I.C. administered the affairs of the corporation fairly, impartially and without discrimination. Administration of F.D.I.C. affairs is committed to these two defendants, and whether they abused their discretion in administering these regulations is immaterial under the provisions of Section 2680(a). Finally, the fifth alleges that the F.D.I.C. procedures violated plaintiff's rights under the Fourteenth Amendment by depriving him of a fair, impartial hearing. The Fourteenth Amendment is inapplicable, since state action is not involved. Section 308, 12 C.F.R., provides for hearings concerning involuntary termination of the insurance status of a bank, issuance of cease and desist orders against any insured non-member bank, and issuance of orders removing or suspending from office, or other specified position, any director or officer of an insured state non-member bank or any other person participating in the conduct of the affairs of such a bank.

When a hearing is permissible, Chapter III, Part 308, 12 C.F.R., sets forth procedures to be followed. Plaintiff does not state that these regulations were not followed or that he sought and was refused a hearing. In his uncontroverted affidavit of April 30, 1971, defendant West states that the Board of Directors of the two banks removed Magellsen as officer and employee before December 18, 1970. Defendant West also states that he advised Magellsen to resign from the Board of Directors of the bank on either December 2 or December 4, 1970.

■ It is the opinion of the court, therefore, that, as a matter of law, the five actions listed in Paragraph XI of the complaint constitute regulatory or discretionary action and thus come within the provisions of Section 2680(a). With regard to plaintiff's claim that F.D.I.C. and West both failed to advise him of George Manuel's bad reputation, there is no statutory duty on the part of either defendant to furnish this information. Moreover, the uncontroverted affidavit of defendant West indicates that neither he nor F.D.I.C. had knowledge of the dealings of Magellsen and Manuel until December 4, 1970. The fact that the application for Federal Deposit Insurance was granted by the Board of Directors on November 25, 1970, substantiates West's affidavit in this regard.

Plaintiff argues, in support of his theory that defendant West's actions are not protected by 28 U.S.C. § 2680(a), that the present case is distinguishable from the discretionary doctrine as stated in *Dalehite, supra.* Plaintiff cites Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). That case involved alleged negligence by the Coast Guard in the operation of a lighthouse and damage caused thereby. The basic theory of the plaintiff therein was that the Coast Guard failed to keep the lighthouse in operation. The Supreme Court ruled that the decision of the Coast Guard to maintain a lighthouse was within its discretion, but that once it began operation and exercised that discretion, it was obligated to use due care to make certain that the light was in good working order. Therefore, when the light was allowed to fail, the negligence of the Coast Guard in this regard was actionable under the Federal Tort Claims Act. The Court distinguished *Dalehite* apparently on the basis that discretion was no longer involved.

Plaintiff also cites Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). This case in-

volved a fire which was fought by the Forest Service. Improper firefighting allowed the fire to spread and destroy part of plaintiff's property. The Court ruled that the discretionary exception of Section 2680(a) was not applicable. The decision was bottomed on a rejection of any distinction under the Federal Tort Claims Act between proprietary and governmental capacity. However, under the facts of *Rayonier*, the Government, upon contracting for exclusive firefighting control and in fact assuming that control with regard to the fire, exercised its discretion. Thus, the rule of *Indian Towing Co.* makes negligence of the Government from that point on actionable under the Federal Tort Claims Act.

■ These cases are not controlling here, however, since the actions in question involved the discretion of F.D.I.C. and West in administering the rules and regulations of the corporation and federal law. Because of the nature of F.D.I.C., there is no point at which the discretion of these defendants ended and a mandatory duty, such as the Coast Guard was found to have assumed in *Indian Towing Co.*, can be said to have begun.

■ Plaintiff's second theory is that defendants were under a mandatory duty imposed by law to fairly and justly, and without discrimination, administer the provisions of the F.D.I.C. 12 U.S.C. § 1820(a). Defendant argues that defendant West was acting within the scope of his authority and in matters committed to his discretion and judgment.

The only case which deals with the question of liability of a Regional Director under these circumstances is James v. F. D. I. C., *supra*. That case, like *Freeling*, *supra*, involved statements made by an F.D.I.C. Regional Director in reports and testimony. These statements were made in the discharge of his official duties. The Court ruled that such statements were absolutely privileged under federal law and that no action for libel and slander could be had on that account. On that basis a motion for summary judgment was granted in favor of the Regional Director. In support of his position, defendant West cites cases involving other federal agencies in which the same principle is found. See, e. g., Bershad v. Wood, 290 F.2d 714 (9th Cir. 1961), (acts of Internal Revenue Service agents not actionable); O'Campo v. Hardisty, *supra*, (governmental officers held not generally liable for their discretionary acts done pursuant to their lawful authority).

It is the opinion of the court that Section 1820(a) of Title 12 does not supersede the Federal Tort Claims Act requirements and in particular 28 U.S.C. § 2680. Section 1820(a) was present in identical form in the original enacting legislation passed June 16, 1933, c. 89 § 12B(k), 48 Stat. 172. If, as plaintiff suggests, Congress in 1950 believed that F.D.I.C. was not administering its regulations fairly, certainly it was within its power to exempt F.D.I.C. from the operation of the Federal Tort Claims Act, which had been passed four years before.

The Chairman of the Senate Banking and Currency Committee did note that the interests of the banks in receiving fair, open-handed treatment from F.D.I.C. was one which must be considered. S. Rep. No. 1482, 89th Cong. 2d Sess. (1966), 1966 U.S.Code Congressional and Administrative News, Vol. 3, pp. 3532, 3534–35. However, the report lacks any discussion of unfairness or discrimination by F.D.I.C. or any discussion of possible exclusion of F.D.I.C. from the Federal Tort Claims Act. Rather, the obvious concern was that the additional powers, which the Committee found were needed to make F.D.I.C. properly effective, be granted "within carefully guarded limits." Vol. 3 at p. 3538. Clearly then, the reference of this report revolves around the needs of F.D.I.C. in 1966 and the concern of the Committee that additional powers not be so unlimited as to deprive the banking institutions of discretion in their operations.

The plaintiff argues that submission of his claim to F.D.I.C. for adjudication under 28 U.S.C. § 2401 and 28 U.S.C. § 2675 is not mandatory. Whistler v. United States, 252 F.Supp. 913 (N.D.Ind.1966); Schlingman v. United States, 229 F.Supp. 454 (S.D.Cal. 1963). However, both of these cases involved claims arising prior to the 1966 amendment. After the 1966 amendment, the district court for the Southern District of Texas, in Beavers v. United States, 291 F.Supp. 856 (S.D.Tex.1968), ruled that, in a suit against a post office for damages in an automobile accident, no action could be initiated in federal court, unless the claim had been submitted to the proper administrative agency and a final decision had been reached. It was the opinion of the court that the 1966 amendments made such submission mandatory.

This rule has been followed in the Ninth Circuit. Claremont Aircraft, Inc. v. United States, 420 F.2d 896 (9th Cir. 1969, as amended 1970). There the court stated that "[e]very tort claim against the United States must first be presented to the appropriate federal agency." (Emphasis supplied.) 420 F.2d at 897. See also, Bialowas v. United States, 443 F.2d 1047 (3rd Cir. 1971); Gutelius v. United States, 312 F.Supp. 51 (E.D.Va. 1970); Cambridge Forest Apartments, Inc. v. United States, 307 F.Supp. 1191 (N.D.Ga.1969); Staley v. United States, 306 F.Supp. 521 (M.D.Pa.1969). All of these cases admit that the pre-1966 amendment language was not mandatory, but hold that, since the 1966 amendment, the requirement is mandatory and a condition precedent to bringing an action in federal court.

Therefore, plaintiff's action is not properly before the court at this time, even assuming F.D.I.C. is a proper party. The complaint fails to allege sufficient facts upon which jurisdiction can be based, due to plaintiff's failure to allege his submission of the claim for adjudication by the appropriate administrative agency.