John W. HOFFMAN et al.,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 40141.

United States District Court,
E. D. Michigan, S. D.

July 21, 1975.

Markle & Markle, Charles C. Cheatham, Detroit, Mich., for plaintiffs.

George M. Fleming, Attorney, Aviation Unit, Dept. of Justice, Washington, D. C., John R. Harrison, Office of General Counsel, Federal Aviation Administration, Washington, D. C., Ralph B. Guy, Jr., U. S. Atty., Saul Green, Asst. U. S. Atty., Detroit, Mich., for defendant.

## OPINION

RALPH M. FREEMAN, District Judge.

This matter is before the court on the motions of the defendant, the United States, for summary judgment. The plaintiffs, John W. Hoffman, Anton Verbiscus, William R. Fischer, Joe Tibus, Duane Braun, George Carlton and Arthur Novotny, brought this suit against the United States under 28 U.S.C. §§ 1346(b) and 2674, the Federal Tort Claims Act. Each was a passenger on a plane owned and operated by American Aviation Company. The plane crashed and the plaintiffs allegedly sustained various injuries.

The American Aviation Company was the holder of an ATCO certificate, issued by the Federal Aviation Administration (FAA). It is this fact which forms the basis of the plaintiffs' claims against the government. They contend that the FAA and the Civil Aeronautics Board (CAB) negligently issued the ATCO certificate because the airline did not hold CAB economic authority as required by a regulation promulgated by the FAA (14 CFR 135.15). There appears to be no dispute about the fact that American Aviation did not hold CAB economic authority because it did not carry the requisite liability insurance mandated by a regulation promulgated by the CAB (14 CFR 298.42(a)(1)).

The government has brought two motions for summary judgment. One is addressed only against the plaintiff William R. Fischer. The government contends that his complaint should be dismissed because of his failure to comply with the two year statute of limitations contained in 28 U.S.C. § 2401(b). The other motion is addressed to all plaintiffs and for that reason the court will turn to it first.

## MOTION FOR SUMMARY JUDGMENT AS TO ALL PLAINTIFFS

The government contends that the plaintiffs' complaint fails to state a claim upon which relief can be granted. In its original brief, attached to the motion, the government contended that there was no cause of action under the Federal Tort Claims Act because the plaintiffs' claims fell within one of the exceptions to suit contained in 28 U.S.C. § 2680(a)–(n). Specifically the government pointed to the provisions of § 2680(a).

Shortly before the hearing on this motion, the court received a supplemental brief from the government in which it asserted two additional grounds in support of its motion: (1) a vague reference to the absence of proximate cause; and (2) the exception to suit provision contained in § 2680(h) which involves claims arising from misrepresentation. The court does not believe that the proximate cause issue has been adequately briefed by the government, nor was it timely raised. Certainly the plaintiffs did not have an opportunity to respond to this issue. While the issue of § 2680(h) was briefed by the government, the plaintiffs had no opportunity to prepare a response. The court does not believe that this ground should be considered at this time because it was not timely raised. The plaintiffs should have an opportunity to consider and respond to an issue of this importance to

the litigation. Thus, neither of these grounds is here considered.

28 U.S.C. § 2680(a) provides as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to–(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The government contends that the actions complained of in this case fall within the discretionary function exception.

One of the regulations promulgated by the FAA is 14 CFR 135.15 which sets forth three requirements for eligibility for an ATCO certificate. In this case the plaintiffs are concerned with the second requirement, found in subsection (b):

To be eligible for an ATCO certificate and appropriate operations specifications a person must—

\* \* \* \* \* \*

(b) hold such economic authority as may be required by the Civil Aeronautics Board \* \* \*

(Emphasis added)

One of the regulations promulgated by the CAB is 14 CFR 298.42 which sets forth the minimum limit of liability required to be carried by an air taxi operator in order to receive CAB approval (hold CAB economic authority). § 298.-42(a)(1) requires the operator to carry at least $75,000 of liability insurance per passenger for bodily injury or death.

The American Aviation Company did not comply with § 298.42(a)(1) and this fact was known to the FAA. Nevertheless, the FAA issued an ATCO certificate to American Aviation, notwithstanding the provisions of 14 CFR 135.-15(b). Presumably, as the government contends, this was done pursuant to FAA Notice 8430.120 entitled *FAA Enforcement Responsibility of CAB Part 298 Requirement* and was signed by the Director of Flight Standards Service of the FAA. This notice informed FAA field personnel not to deny ATCO certificates to applicants because of their failure to meet the CAB insurance requirements but to refer these violations to the CAB for enforcement. The government has provided the court with no citation of authority which authorized the FAA to disregard its own regulations in this fashion.

The parties have formulated the issues differently. The government contends that enforcement of regulations is a discretionary function and falls within the exception to the Federal Tort Claims Act contained in 28 U.S.C. § 2680(a). It notes that the FAA is charged with promulgating and enforcing safety regulations and the CAB is charged with promulgating and enforcing economic regulations. It argues that there is no allegation concerning safety regulations but only an allegation of the failure to enforce an economic regulation. The government reads the plaintiffs' complaint as arguing that the FAA should have enforced the CAB regulation Part 128 by not issuing an ATCO certificate. It contends that the "FAA Notice" signed by the second in command of the FAA is a policy decision not to enforce the CAB regulation in this manner but rather to let the CAB enforce its own regulations through court action or administrative proceedings as provided by Subpart H of Part 298. This policy decision is also argued to fall within the exception of § 2680(a). Thus the government argues that this is a case involving the enforcement of an economic regulation and falls within the discretionary function exception of § 2680(a), both as to the FAA and as to the CAB.

The plaintiffs agree that the enforcement of regulations is a discretionary

function. However, they contend that this is not the question. They contend that once regulations have been promulgated—a discretionary function—the promulgating agency must exercise due care and follow these regulations in their administration—a ministerial or administrative function and not a discretionary function. Thus the plaintiffs argue that the FAA was bound to follow the standard contained in 14 CFR 135.15 and that the failure to do so made it subject to suit and liability under the Tort Claims Act:

> While the government's contention that the Civil Aeronautics Board may be protected by the discretionary activity exclusion of the Tort Claims Act for its failure to enforce Part 298, the Federal Aviation Administration may not make the same claim as it is not charged with failing to enforce Part 298 but is charged with negligence in issuing a license (ATCO certificate) in violation of its own regulation Part 135.15.
>
> (Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 4)

While the government sees this as a Part 298 case, the plaintiffs argue that this is a Part 135.15 case. They argue that once the regulation was promulgated, failure to follow it amounts to negligence; an agency cannot decide not to follow part of a regulation other than by amendment, but the FAA knowingly violated their own regulations.

Thus the threshold inquiry must be whether this case is an enforcement case as contended by the government, or whether it is a certification case as contended by the plaintiffs.

The pertinent paragraph of the complaint reads as follows:

IX

That the defendant through employees of the Federal Aviation Administration and the Civil Aeronautics Board was negligent in issuing ATCO Certificate No. 5–C–100 to American Aviation Company when it knew or in the exercise of reasonable care should have known that the said American Aviation Company had not complied with Part 298, Federal Aviation Regulations or was in compliance with § 401(a), Federal Aviation Act of 1958; in permitting American Aviation Company to operate as an air carrier or air taxi engaged in air transportation or air commerce when it knew or in the exercise of reasonable care should have known that the said American Aviation Company was not the holder of economic authority under the Federal Aviation Act of 1958 or the Federal Aviation Regulations and did not hold a certificate of public convenience and necessity nor was it in compliance with the economic regulations of the Federal Aviation Administration [sic] and particularly Part 298 thereof;

Although the complaint makes the same allegations against the CAB and FAA, it is necessary to view the roles of the CAB and the FAA separately.

■ The CAB is charged with promulgating and enforcing economic regulations. Part 298.42, concerning liability insurance, is one such regulation. However, the CAB does not issue ATCO certificates. Thus, the only viable allegation against the CAB must be with regard to their failure to enforce their regulation. By CAB regulations, this enforcement could have taken place even after American Aviation commenced its operations.[1] It thus appears to be a

---

1. In this regard it is interesting to note the provisions of 14 CFR § 298.50. This subpart concerns registration and reregistration of air taxi operators with the CAB. § 298.-50(c)(1) explains the information which must be supplied by a carrier filing for initial registration. This information includes the carrier's FAA certificate number, *if any*, and the name given the CAB must be the same as that on the FAA certificate, *if any*. This provision seems to contemplate that, as far as the CAB was concerned, an FAA certificate may have been obtained prior to CAB registration, although not necessarily.

classic enforcement case where someone under the jurisdiction of the CAB is violating one of its regulations. The plaintiffs appear to agree that such an enforcement case falls within the discretionary function exception to suit contained in § 2680(a). In this regard, see *Pan American World Airways, Inc. v. C.A.B.,* 129 U.S.App.D.C. 159, 392 F.2d 483 (1968) at 495, f. n. 22.

■ However, with regard to the FAA, the plaintiffs do. not really complain that the FAA failed to enforce the CAB's regulation. They complain that the FAA failed to follow *its own* regulation, Part 135.15 in issuing the ATCO certificate. It is not quite accurate to say that the FAA failed to "enforce" Part 135.15 for this was not a situation where someone under the jurisdiction of the FAA was violating one of its regulations. Rather, the regulation was addressed to the FAA itself and not to carriers. It does not tell carriers what they must or must not do; it tells the FAA that in order for it to issue an ATCO certificate, the applicant must meet certain requirements. The plaintiffs complain that the FAA did not abide by this regulation in issuing the ATCO certificate to American Aviation. Thus the complaint, as it relates to the FAA, does not constitute an enforcement case but, rather, it looks more like a negligent certification case although it is not necessary to pin a label on it. This conclusion, however, does not resolve the issue of whether the claims against the FAA are also barred by § 2680(a).

The basic issue here presented is whether or not the issuance of an ATCO certificate in the circumstances of the case at bar was a discretionary function performed by the FAA and thus within the exception to suit provision contained in § 2680(a). The starting point of any inquiry into the applicability of § 2680(a) is with the Supreme Court case of *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

In this case, Ammonium Nitrate fertilizer was being produced and a decision to permit exportation of the fertilizer was made by the United States. Production and distribution were under the control of the government. The fertilizer was shipped from various plants to ports, where it was ultimately placed aboard ships. Explosions ensued, which resulted in a major catastrophe. Suits were filed against the United States under the Federal Tort Claims Act. The trial court found for the plaintiffs, enumerating as some of the acts of negligence the prescription of bagging temperature, the type of bagging required, the labelling required, the coating of the fertilizer required, and failures of the Coast Guard in regulating the storage and loading of the fertilizer. The Court of Appeals reversed and was affirmed by the Supreme Court. The Supreme Court held that as a matter of law, the facts found by the District Court could not give it jurisdiction under the Act because the claim was based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the government. The Court went on to hold that the acts of negligence found by the District Court did not subject the government to liability because the decisions about the fertilizer processing and shipping were all responsibly made in the exercise of judgment at a planning rather than an operational level. In so holding, the Court made the following pertinent statements:

It will be noted from the form of the section, see 346 U.S. 18, 73 S.Ct. 959, *supra,* that there are two phrases describing the excepted acts of government employees. The first deals with acts or omissions of government employees, exercising due care in carrying out statutes or regulations whether valid or not. It bars tests by tort action of the legality of statutes and regulations. The second is applicable

---

It is interesting to compare this to the FAA provision, Part 135.15, which requires CAB

registration *prior* to obtaining an FAA certificate.

in this case. It excepts acts of discretion in the performance of governmental functions or duty "whether or not the discretion be abused." Not only agencies of government are covered but all employees exercising discretion.

(346 U.S. at 32–33, 73 S.Ct. at 966)

\* \* \* \* \* \*

The "discretion" protected by the section is not that of the judge—a power to decide within the limits of positive rules of law subject to judicial review. It is the discretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law.

(346 U.S. at 34, 73 S.Ct. at 967)

\* \* \* \* \* \*

It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

(346 U.S. at 35–36, 73 S.Ct. at 968)

Before turning to subsequent cases which have attempted to apply the principles of *Dalehite*, it is important to keep the situation at bar clearly in mind. First of all, there is a regulation. 14 C.F.R. 135.15 was promulgated by the FAA and it sets forth the minimum requirements which must be met by an applicant for an ATCO Certificate. There is no question but that the promulgation of this regulation was a discretionary function and a party may not attack its validity through a tort action. How-

ever, the question here is whether it was a discretionary function to choose to ignore the regulation. In other words, while there may be a certain amount of discretion involved in certification, is there discretion in determining the initial question of eligibility for certification?

A complication in the case at bar is the "FAA Notice" which, in effect, instructed FAA field personnel to ignore the provisions of § 135.15(b). This fact raises additional questions: (1) Was there authority to "amend" a duly promulgated regulation in this manner? (2) Whether or not there was such authority, does the fact that the "FAA Notice" was promulgated alter the applicability or nonapplicability of § 2680(a)?

The parties have not cited, and the court has been unable to find, any case which involved the precise issue before the court. In particular, the court has not found a case in which a federal agency granted a certificate or license to a party who was not eligible for such certificate or license according to the plain terms of the pertinent statute or regulation. However, there are cases which lend a certain amount of guidance to the court.

In *Magellsen v. Federal Deposit Insurance Corp.*, 341 F.Supp. 1031 (D.Mont. 1972), cited by the government, the plaintiff brought a tort action against the FDIC complaining of the actions taken with regard to his application for FDIC insurance. The court held that each of the actions complained of fell within the discretionary function exception of § 2680(a). These actions included the decision as to whether the application should be granted and the failure to act on the application. A third allegation was that the Regional Director aroused resentment against the plaintiff and discriminated against him in applying the rules and regulations of the FDIC. With respect to this allegation, the court stated at 1035–1036:

Application of the F.D.I.C. regulations is a discretionary, regulatory function

of the Regional Director and is committed to him by the rules and regulations of F.D.I.C. It is the Regional Director's duty under 12 C.F.R. § 303.10 to make recommendations to the Board of Directors for use in considering applications of proposed banks for deposit insurance. It follows that the Regional Director must make inquiries concerning the bank upon which to base this report. Whether he abused his discretion in making such inquiries is immaterial since he was using his discretion in relation to matters under his supervision and control.

The FDIC regulations in question advised the Regional Director of what factors he should consider in determining whether to grant an application. Unlike the regulations involved in the case at bar, the FDIC regulation quoted in the opinion did not state that certain of these factors were conclusive as to the eligibility or noneligibility of an applicant. In this regard it is worth noting what the court said with respect to the plaintiff's allegation that he was denied a fair and impartial hearing:

> When a hearing is permissible, Chapter III, Part 308, 12 C.F.R., sets forth procedures to be followed. Plaintiff does not state that these regulations were not followed or that he sought and was refused a hearing.
> (341 F.Supp. at 1036)

The question thus left unanswered is whether or not the court would have found that an allegation that the regulations were not followed would also have fallen within the discretionary function exception. It is this latter question which is more clearly analogous to the situation in the case at bar.

In *Marr v. United States*, 307 F. Supp. 930 (E.D.Okl.1969), the plaintiff brought a tort action against the CAB for negligence. She complained that the CAB had negligently issued a certificate of convenience and necessity to an air transportation carrier and a pilot's license to a particular pilot, neither of whom met the requirements for such certificate or license. The government contended that the actions complained of fell within the discretionary function exception. Initially the court refused to dismiss the complaint on this ground and ordered the plaintiff to file additional information:

> The establishment of requirements for pilots and aircrafts and of methods for determining whether those requirements have been met, and the providing of landing systems and communication and weather information facilities, are discretionary functions of government. *But the carrying out of those requirements and methods in some instances may not be discretionary*, and it is in this respect that the plaintiff claims the government was negligent and liable. (Emphasis added)
>
> (307 F.Supp. at 931)

In order for the court to determine whether the acts complained of were operational, as opposed to discretionary, functions, the plaintiff was ordered to supply additional information. After the plaintiff amended her complaint, the court dismissed the case:

> In this case, as set out in both the original complaint and the amended complaint, the acts of negligence alleged are failures of the Civil Aeronautics Board to require adequate inspection tests for aircraft, adequate medical examination standards for pilots, adequate weather information facilities and personnel, and adequate landing system controls at a place where a charter flight was permitted to land. All of these, if true, involve discretionary functions of government and alleging dereliction at the operational level does not convert the action into one that is permitted against the United States.
>
> (307 F.Supp. at 932)

The allegations of negligence outlined in the above quotation do appear to fall within the discretionary function exception since they all relate to the planning

level of government—the promulgation of standards. However, as outlined earlier in the *Marr* opinion, the original complaint also alleged that the CAB had chartered and then failed to suspend the airline "after notice of previous carelessness in providing insurance for injury or death of members of the aircraft crew . . ." (307 F.Supp. at 931) No mention of this allegation was made when the court dismissed the action. The reason for this is not apparent. However, it is important to note that the court did state that the carrying out of promulgated requirements may not be discretionary functions in all circumstances.

The government has also cited the court to the cases of *Hooper v. United States*, 331 F.Supp. 1056 (D.Conn.1971) and *Coastwise Packet Company v. United States*, 398 F.2d 77 (1st Cir. 1968) cert. denied 393 U.S. 937, 89 S.Ct. 300, 21 L.Ed.2d 274. However, neither of these cases lends particular support to the government's position.

In the *Hooper* case, the plaintiffs sought damages incurred as a result of the construction of a power generating station in an area where they had previously moored their boats. The court held that the granting of a permit by the Army Corps of Engineers was discretionary. No further explanation was given and it is thus impossible to determine whether this case is applicable to the case at bar.

In the *Coastwise Packet* case, the plaintiff brought suit against the Coast Guard for the delay in granting it a certificate of inspection. Plaintiff alleged that the standards imposed were unreasonably severe, were not developed rapidly enough and were negligently applied. The court found that the alleged actions fell within the discretionary function exception. However, it is very important to note what the court said in so holding:

Plaintiff's is not a case where there was a single, known, objective standard which, because of administrative

negligence, the Coast Guard failed to apply. In such an area there might be questions. When no standard exists, then the process of certifying, insofar as it involves groping for a standard, is within the discretionary exemption of the Act.

(398 F.2d at 79)

\* \* \* \* \* \*

This is not a case where plaintiff's property suffered damage from the negligent performance of an act the Coast Guard had undertaken after policy had been established

. . . . . .

(398 F.2d at 80)

Thus the court seems to be making a distinction between various types of certification cases, only some of which fall within the discretionary function exception. This distinction is more forcibly drawn in the case of *Hendry v. United States*, 418 F.2d 774 (2nd Cir. 1969).

In the *Hendry* case the plaintiff filed suit against the United States Coast Guard for the negligent withholding of his license based on a negligent psychological determination that he was unfit for sea duty. The district court, after trial, dismissed the case for lack of subject matter jurisdiction and, alternately, gave judgment to the government on the merits. While the Second Circuit agreed with the determination on the merits, it disagreed with the conclusion that the acts complained of fell within the discretionary function exception. While the facts of the *Hendry* case are not analogous to the case at bar, the analysis of the court is quite pertinent. After reviewing prior cases dealing with licensing vis a vis the discretionary function exception, the court stated:

No very clear rule emerges from either the licensing or the malpractice cases. It seems clear that where the grant of a license depends upon the balancing of several factors and the grant or refusal to grant is made without reliance upon any readily ascertainable rule or standard, the courts will hold the judgment to be

discretionary. On the other hand, the *Pennsylvania Railroad* case, *supra*, [124 F.Supp. 52 (D.N.J.1954)] seems correctly to indicate that where the grant involves nothing more than the matching of facts against a clear rule or standard, the grant will be considered operational and not discretionary. Thus a hypothetical statute requiring that an employment certificate issue to all applicants of more than a given age, height, and weight would not empower an official to make a discretionary judgment under Section 2680(a). (418 F.2d at 782)

While the court stated that it did not intend to propose a "litmus paper test" to be applied in cases involving the discretionary function exception, it did note that several factors were pertinent. One of these factors was whether the complaint attacked the nature of rules promulgated or whether it attacked the way in which the rules were applied. After reviewing the *Dalehite* decision, the court stated that *Dalehite*

. . . appears to privilege from suit those decisions which either establish a rule for future governmental behavior or constitute an *ad hoc* determination which neither applies an existing rule nor establishes one for future cases. By contrast *Dalehite* seems to subject to suit those decisions which apply an existing rule to the facts of a case. To be sure, the application of existing rules in new contexts sometimes involves policy decisions by administrative officials akin to those made by legislators. Nevertheless, it can usually be determined whether the governing statute or regulation contemplates that an official will make new rules or *ad hoc* decisions on the one hand or apply old understood rules on the other.

(418 F.2d at 783)

Another factor thought to be pertinent was whether the decision-maker necessarily looked to considerations of public policy. In the *Hendry* case, the court found that the governing statutes and regulations did not appear to convey discretion to identify and consider public safety goals.

Another case which followed the same reasoning as that applied in the *Hendry* case was *Duncan v. United States*, 355 F.Supp. 1167 (D.D.C.1973). In that case the plaintiff filed a tort suit against the government for the FAA's allegedly negligent withholding of his airman medical certificate. The government filed a motion to dismiss, contending that the actions complained of fell within the discretionary function exception. The plaintiff was not contesting the power of the Administrator to make rules concerning certification; he alleged negligence in the application of these rules.

14 CFR Part 67 set forth the medical standards for certification. Part 67.11 states that any applicant "who meets the medical standards prescribed in this part, based on medical examination and evaluation of his history and condition, is entitled to an appropriate medical certificate." The court stated that "(i)t seems clear, therefore, that any applicant meeting the standards as set forth by the Administrator has a legal right to the certificate." (355 F.Supp. at 1169)

The court found that the situation fell within those cases where clear standards are matched to actual facts where application is found to be operational and not discretionary. "Since an applicant is entitled to a certificate if he qualifies under the regulations (14 CFR 67.11), application of that policy to the individual case is an administrative decision at the operational level which if negligently done will make the government liable." (355 F.Supp. at 1170).

The court has also reviewed the cases cited by the government which pertain to the granting of grazing permits: *Chournos v. United States*, 193 F.2d 321 (10th Cir. 1951); *Powell v. United States*, 233 F.2d 851 (10th Cir. 1956); *Kunzler v. United States*, 208 F.Supp. 79 (D.Utah 1961); and *United States v. Morrell*, 331 F.2d 498 (10th Cir. 1964). The government cited these cases for the

proposition that the granting or denial of permits or licenses is a discretionary function. Indeed, these cases do so hold —at least as to grazing permits. To the extent that these cases may be read to stand for the broad proposition that the granting of *all* permits, in *all* situations and under *all* regulations fall within the discretionary exception, the court prefers the reasoning of the *Hendry* and *Duncan* cases, *supra*.

While the court believes that the granting or denial of a license or certificate usually entails some amount of discretion, this is not necessarily so in all cases, particularly with regard to an initial determination of eligibility. The regulation involved here, 14 CFR 135.15, presents clear standards to be applied to fact situations in order to determine basic eligibility. Application of this regulation is done after the planning, or discretionary, stage—at the operational level. A claim of negligence in the application of this regulation does not involve a discretionary function. In fact, the very terms of the regulation connote a lack of discretion: "To be eligible for an ATCO certificate . . . a person *must*" [emphasis added] meet a readily ascertainable standard; he must hold CAB economic authority. Negligence in the application of this regulation would render the government liable. While the cited cases generally involve a refusal to grant a license, the same principles apply to an allegedly wrongful decision to grant the license.

However, the court must still look to the effect of the "FAA Notice" since Part 135.15 does not stand alone in this case. The government has not cited any provision whereby the FAA was empowered to alter the standards contained in a regulation through the informal procedure here employed. While the court

recognizes the government's argument that the formulation of this notice was a policy decision—a discretionary act—the court does not believe that this alters the conclusion that § 2680(a) does not apply.

When the FAA promulgated the "FAA Notice," it was formulating a policy. In short, the policy was to disregard a former policy decision embodied in a duly promulgated regulation. Admittedly, the formulation of policy falls within the discretionary function exception. Thus, if one were to characterize the plaintiffs' complaint as one attacking a policy, the suit would be barred. However, one can just as easily characterize the complaint as one complaining of the refusal to apply a regulation. It is this latter characterization which the court believes to be the proper one.

The result would be different if the regulation was not as specific and thus gave the FAA discretion in its application. But the court does not read the regulation in this manner. The result would also be different if the government could point to some authority which gave the FAA the power to change the policy by a method other than the formal amendment of the regulation. But without such citation of authority, the court believes that the regulation did not give the FAA the "discretion" to informally amend the regulation.

In sum, if the "FAA Notice" stood alone, the court would find that the present suit was barred. As stated earlier in this opinion, if the regulation stood alone, § 2680(a) would not apply. Looking at the two together, and absent some showing of authority as to the "Notice," the court must conclude that since they are inconsistent, the regulation must prevail.[2]

2. The result here is somewhat ironical since, in effect, if the plaintiffs prevail it would amount to the same as a tort action attacking the policy of the "FAA Notice," giving rise to damages. However, unless and until the government can demonstrate that the "FAA Notice" could effectively alter the regulation, the court must, in effect, ignore the Notice. The circle must be broken at some point. The fact that it was written and signed, rather than being an oral directive, should make no difference absent the requisite showing.

The government's motion for summary judgment as to all plaintiffs is denied without prejudice.

## MOTION FOR SUMMARY JUDGMENT AS TO WILLIAM R. FISCHER

The government has brought a motion for summary judgment against the plaintiff, William R. Fischer, on the grounds that Fischer did not file administrative claims with the FAA and CAB within the two year period specified by 28 U.S.C. § 2401(b).

28 USC § 2401(b) provides as follows:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or regit ¸red mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2675(a) expands on this provision and provides that no tort action can be commenced against the United States unless a claim has first been presented to the appropriate Federal agency and the claim has been denied. The accident in this case occurred on October 28, 1970. Thus, in order to comply with 28 U.S.C. § 2401(b), the claim must have been presented to the agencies by October 28, 1972.

28 C.F.R. § 14.2 defines what is meant by a claim being "presented:"

> (a) For purposes of the provisions of section 2672 of Title 28, United States Code, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, . . . an executed Standard Form 95 or other written notification of an incident . . .

In *Commercial Underwriters v. Dobbs,* # 39019 (E.D.Mich. decided May 8, 1973), Judge Gubow of this court held that the mailing of a claim within the statutory period was not sufficient. In that case the accident occurred on September 24, 1969 and the statutory period ran until September 24, 1971. The plaintiff mailed his claim on September 12, 1971 but it was not received by the agency until October 21, 1971. The court held that the claim was barred since it was not received until after the statutory period had run. Thus, unless the FAA and CAB received the Fischer claim by October 28, 1972, the action would be barred. The plaintiff argues that once the claim was mailed, it was irrevocably placed in the government's hands and that there are all sorts of problems involved in relying on someone to stamp a claim in or determine when it reached someone's desk. While the court would agree with this statement, the fact remains that the regulation requires receipt, not mere mailing.

The government has supplied two affidavits in support of its motion. It claims that these affidavits establish the fact that the Fischer claim was not received by the FAA and CAB until after October 28, 1972.

The affidavit of George H. Foster, the Acting Assistant Chief Counsel of the FAA, states that "the administrative claim filed by and on behalf of plaintiff, William R. Fischer, was received by the Federal Aviation Administration on October 31, 1972." The affidavit of Robert L. Toomey, Assistant Chief of the Litigation and Research Division of the CAB, states that "(t)he administrative claim filed by William R. Fischer, one of the plaintiffs herein, was received at the Board's mail room on October 30, 1972."

The plaintiff Fischer has countered these affidavits with an affidavit of his attorney which states that the claims were mailed on October 27, 1972. Attached to the affidavit is a copy of the receipts for certified mail which indicate that the mailing took place on October 27, 1972. The plaintiff argues that the claims should have reached the agencies on the following day, October 28, 1972 which was the last day of the two year period. He points out that October 28 was a Saturday and contends that the

government's affidavits are insufficient to establish that the claims were not actually delivered on the 28th.

The plaintiff also argues that by closing its offices on Saturday and Sunday, the government unilaterally shortened the statute of limitations period since a claim could not be "received," as defined by the government, on those days. Although this contention need not be resolved at this time, the court would also note that it is general knowledge that government offices are not open on these days and a claimant should keep this fact in mind.

This issue, and other potential issues involving the delivery of mail on Saturday, need not now be decided because the court agrees that the government's affidavits are insufficient. Although, as noted earlier with respect to the motion for summary judgment as to the whole case, there does not appear to be a cognizable claim against the CAB, the court will, nonetheless, discuss the CAB affidavit as well as that of the FAA.

The defects of the two affidavits are apparent. The FAA affidavit states, in conclusory terms, that the claim was not received until October 31. The CAB affidavit, also in conclusory terms, states only that the claim was received in the mail room on October 30, the argument of the plaintiff best sums up the insufficiency of these affidavits:

> Neither Mr. Toomey or Mr. Foster indicated that they would be the persons who would receive the mail from the Postal Service, the procedure for distribution of mail delivery within their respective agency or an explanation or definition of their use of the word "received" in their affidavits. Mr. Toomey indicates the claim was received in the mail room on October 30, 1972. He does not indicate the source of his knowledge of this fact and presumably would not perform any services in the mail room as Assistant Chief, Litigation and Research Division, office of the General Counsel. Mr. Foster does not indicate the place

of delivery within the Federal Aviation Administration nor that he would be the first person to observe delivery of the claim.

Furthermore, although the agency offices may have been closed, the claims may have been delivered to the offices but not stamped or opened. In short, there are too many possibilities which remain unexplained. Thus the court cannot say that the claim was not presented to the agencies within the statutory period.

The government's motion for summary judgment as to William R. Fischer is denied. An appropriate order shall be submitted.